[No. A075264. First Dist., Div. Two. Oct. 2, 1997.]

MICHAEL W. FORREST et al., Plaintiffs and Appellants, v.
JOHN M. BAEZA et al., Defendants and Appellants.

COUNSEL

Corey, Luzaich, Gemello, Manos & Pliska and Dario de Ghetaldi for Defendants and Appellants.

David M. McKim for Plaintiffs and Appellants.

OPINION

KLINE, P. J.—This case raises issues pertaining to a motion to disqualify the attorney simultaneously representing two closely held, family-run corporations, and two of the corporations' three shareholders. The trial court granted the motion to disqualify the attorney from representation of the corporate parties, but allowed him to continue his representation of the individuals. The minority director/shareholder appeals, contending the court erred in failing to grant the disqualification motion in full. The corporations, on cross-appeal, urge the trial court erred in granting the motion at all.

STATEMENT OF THE CASE AND FACTS

This case involves a dispute between the three shareholders of Ba-Cel, Inc. (a corporation primarily engaged in the business of automobile towing and now known as Michael W. Forrest, Inc.), and Elgin Auto Body, Inc. (a corporation primarily engaged in the business of automobile body repair and now known as Forrest Auto Body, Inc.). The corporations are each owned in equal measure by Michael W. Forrest, his wife, Sandra Forrest, and Sandra Forrest's brother, Ritch Ricetti. The three shareholders were each officers and directors of the corporations until September 22, 1994, when the Forrests purportedly removed Ricetti from office.

On January 26, 1994, Michael W. Forrest and Ba-Cel, Inc., filed a complaint (No. 386666) for damages and declaratory relief against John M. Baeza, a former officer and 50 percent shareholder of Ba-Cel, Inc., and various insurance companies and brokers. The complaint alleged Baeza had procured inadequate liability insurance for the corporation before selling his interest. The plaintiffs were represented by David M. McKim.

On June 14, 1994, Baeza filed a cross-complaint for indemnity against Michael Forrest, Sandra Forrest, Ritch Ricetti and the insurance defendants. McKim filed an answer to the cross-complaint on behalf of Michael and Sandra Forrest (the Forrests) and Ricetti.

On November 23, 1994, a new attorney was substituted as counsel for Ricetti.

On November 28, 1994, McKim filed on behalf of the Forrests and Elgin Auto Body, Inc., a complaint (No. 390289) for damages, contribution and equitable subrogation against Ricetti and Baeza.[1] The complaint alleged malfeasance against Elgin by Ricetti, and a conspiracy between Ricetti and Baeza to drive the Forrests out of the business and enable Baeza to repurchase stock at a discounted price. The plaintiffs sought contribution for amounts owed by Ricetti on the promissory notes by which the corporation's stock had been purchased, alleging Ricetti had failed to pay these amounts and the Forrests had done so in order to avoid foreclosure upon their home, which secured the notes. They further sought equitable subrogation to the secured obligations held by Baeza and Celestre.

On December 9, 1994, Ricetti filed notice of a motion for appointment of a receiver to manage the affairs of Elgin and Ba-Cel. He also filed the first of his motions to disqualify McKim as counsel for the Forrests and the corporations in the two pending cases, alleging a conflict of interest due to McKim's prior representation of the Forrests, the corporations and Ricetti in the litigation.

On January 23, 1995, the trial court denied Ricetti's motions to disqualify McKim and to appoint a receiver, and granted his motions for leave to file a cross-complaint and to consolidate the two cases. Ricetti filed a cross-complaint against the Forrests, the corporations, and the insurance parties. Ricetti alleged the corporations were alter egos of the Forrests; the Forrests

---

[1]The complaint also named as a defendant Julio Ricetti, father of Ritch Ricetti and Sandra Forrest. According to the allegations of subsequent pleadings, Baeza and Carmelo Celestre had sold their Elgin and Ba-Cel stock to the Forrests and Julio Ricetti; the latter then transferred his shares to Ritch Ricetti.

made personal use of assets and funds of the corporations, transferred assets and funds of the corporations to themselves without adequate consideration, and operated the corporations to Ricetti's detriment. He further alleged that the Forrests improperly removed Ricetti as a director and officer of the corporations at a meeting on September 22, 1994. Among other things, Ricetti sought damages, removal of the Forrests as directors, and winding up and dissolution of the corporations (for the protection of Ricetti as the minority shareholder).

In April 1995, Sandra Forrest's deposition was taken. As evidenced by the excerpts included in the record, she testified that cash brought into Ba-Cel was recorded on deposit slips, except that before Ricetti left, the Forrests and Ricetti each received $500 a week that was not recorded. After Ricetti's departure, everything was recorded except cash overtime payments to four employees. Forrest also stated that prior to Ricetti's departure she would "skim" from lien sales, with Ricetti receiving one-third of the money. Forrest kept a record of the income not recorded on the deposit slips, so that the corporation's total income could be ascertained by consulting this record plus the deposit slips. The income reflected in this separate record, however, was not reported on the corporation's income tax returns or on the Forrests' or Ricetti's returns. The cash payments Forrest made to employees were not reported to federal or state authorities or to the corporation's accountant. Forrest denied using undeposited cash for personal purposes. Forrest testified that a check from Julio Ricetti, for the purchase of an engine through Elgin, was at Ritch Ricetti's direction cashed and split three ways between Ricetti and the Forrests.

On January 19, 1996, Ricetti filed a second motion to disqualify McKim. In his accompanying declaration, Ricetti alleged that his inspection of the corporate records revealed embezzlement by the Forrests from the corporations. Ricetti submitted excerpts from Sandra Forrest's deposition and took the position that Sandra Forrest had admitted embezzlement, tax fraud and other crimes, creating an actual conflict of interest between the Forrests and the corporations that could not be waived.

On February 22, 1996, the parties stipulated to have the disqualification motion determined by retired Justice Robert Kane, a referee.

In opposition to the motion to disqualify, the Forrests submitted a joint declaration affirming their wish, as individuals and as shareholders of the corporations, to have McKim continue his representation. The Forrests stated they had taken no cash distribution from either corporation for which Ricetti did not get a corresponding proportionate share; no creditor of either

corporation ever went unpaid because of cash distributions to the shareholders; and two accountants had been retained and had begun to redo the corporate tax returns to account for the cash withdrawals. They further stated that throughout McKim's representation, the corporations had had separate general counsel. The Forrests felt Ricetti's disqualification motion had been brought, on the eve of trial, for purposes of harassment. In their brief opposing the disqualification motion, the Forrests noted that if Ricetti was permitted to amend his cross-complaint to allege a derivative action against the Forrests and the corporations regarding the purported embezzlement and tax related liabilities, McKim "arguably" would be prohibited from joint representation as to those issues.

The Forrests also submitted the declaration of Ron Ferretti, a retired San Mateo County Sheriff, who stated that he had on several occasions observed Sandra Forrest hand Ricetti "a thick wad of currency" saying "here's your money" or "here's your share," creating the impression Forrest was giving Ricetti his share of the businesses' profits. Ferretti also declared he had been present at the Forrests' home when Ricetti asked Sandra Forrest to keep his $6,000 share of cash in the wall safe until he could obtain his own safe. The declaration of Hattie Ferretti related the same incident.

McKim's declaration in opposition to the motion to disqualify stated that a subpoena of Ricetti's bank records showed his use of his checking account dropped dramatically after he became a shareholder and rose again after the Forrests stopped making cash distributions in the summer of 1994, and that Ricetti wrote checks to "cash" before becoming a shareholder and after being terminated as an officer, but not in between.

Ricetti in turn, submitted deposition testimony, in which he denied ever receiving cash distributions from the corporations or the Forrests, or knowing the Forrests or corporation employees were receiving cash distributions or payments. With respect to his bank records, Ricetti did not remember why the number of checks written dropped, but explained it rose again after he was terminated from the corporations because he was at home all the time and took responsibility for paying more bills. Ricetti denied ever asking Sandra Forrest to keep cash for him in her safe. Ricetti also submitted the declaration of his father stating he had overheard Michael Forrest and Ron Ferretti agreeing to falsely represent that Ferretti was an employee of Ba-Cel on Ferretti's application for a mortgage. Ricetti's own declaration made further accusations against the Forrests, the Ferrettis and McKim.[2]

At the hearing before Justice Kane on March 11, 1996, McKim argued there was no actual conflict between the Forrests and the corporations due to

---

[2]Ricetti accused the Forrests, the Ferrettis and McKim of making false statements in their declarations regarding Ricetti's conduct and intentions and accused Ron Ferretti and the

the cash distributions and improper tax reporting because the Forrests had hired two accountants who were straightening out the situation. McKim urged that Ricetti's claims that the Forrests took money for their own use were personal, not derivative claims of the corporations, because if as the Forrests maintained Ricetti participated equally in the distributions, they were lawful distributions agreed to by the only three shareholders of the corporations. McKim also claimed any conflict was waived by the Forrests as shareholders of the corporations.

On March 15, 1996, Ricetti filed his first amended cross-complaint adding derivative causes of action for breach of fiduciary duty and an accounting, and deleting the cause of action for involuntary dissolution of the corporations.

On April 1, 1996, the referee signed an order denying the motion to disqualify McKim. The referee found no actual conflict, based on the record existing at the time of the motion, and held damage to the corporations would have to be alleged by means of a derivative action. The referee further found any conflict had been effectively waived by a majority of the corporations' shareholders.

Ricetti filed objections to the referee's decision and a new motion for disqualification based on his derivative action against the Forrests. On June 3, 1996, the court found no abuse of discretion in the referee's decision and appointed Justice Kane to hear the new motion for disqualification. The parties agreed to argue the matter without further briefing.

On June 20, 1996, after a hearing which was not reported, the referee granted the motion to disqualify as to McKim's representation of the corporations but denied it as to his representation of the Forrests. The superior court's order adopting the referee's decision was filed on June 27, 1996.

On July 10, 1996, Ricetti filed a petition for writ of mandate (*Ricetti v. Superior Court*, No. A074866). The petition was denied on July 25, 1996, on the ground that an order denying a motion to disqualify counsel is appealable.

Ricetti filed a timely notice of appeal on July 29, 1996, appealing the decision to allow McKim to continue to represent the Forrests. The corporations filed a notice of cross-appeal seeking review of the decision to disqualify McKim from representation of the corporations.

Forrests of improper conduct. Ricetti additionally charged that the Forrests had succeeded in defeating the first motion to disqualify McKim in part by submitting perjurous declarations from themselves, McKim and Frank Blum (former corporate counsel) stating that at the time of the Forrests' and Ricetti's initial meeting with McKim about filing the original lawsuit, Ricetti was neither an officer nor a director of either of the corporations. Ricetti also stated his belief that the Forrests were continuing to steal money from the corporations.

## DISCUSSION

■ An order granting or denying a motion to disqualify counsel is reviewed for abuse of discretion. (*Truck Ins. Exchange* v. *Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1055 [8 Cal.Rptr.2d 228]; *Metro-Goldwyn-Mayer, Inc.* v. *Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1838 [43 Cal.Rptr.2d 327].) "The trial court's exercise of discretion is limited by applicable legal principles and is subject to reversal when there is no reasonable basis for the action taken." (*Metro-Goldwyn-Mayer, Inc. supra,* 36 Cal.App.4th at p. 1838.)

■ "The issue of disqualification 'ultimately involves a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. The paramount concern, though, must be the preservation of public trust in the scrupulous administration of justice and the integrity of the bar. The recognized and important right to counsel of one's choosing must yield to considerations of ethics that run to the very integrity of our judicial process.' " (*Metro-Goldwyn-Mayer, Inc.* v. *Tracinda Corp., supra,* 36 Cal.App.4th at p. 1838, quoting *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585 [283 Cal.Rptr. 732].)

■ Rule 3-310 of the Rules of Professional Conduct of the State Bar of California[3] provides in pertinent part: "(C) A member shall not, without the informed written consent of each client: [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict . . . [¶] (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Where an attorney's conflict arises from successive representation of clients with potentially adverse interests, "the chief fiduciary value jeopardized is that of client *confidentiality.*" (*Flatt* v. *Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950], italics in original.) The initial question in such cases is whether there is a "substantial relationship" between the subjects of the former and current representations. (*Ibid.; Metro-Goldwyn-Mayer, Inc.* v. *Tracinda Corp., supra,* 36 Cal.App.4th at p. 1839; *Truck Ins. Exchange* v. *Fireman's Fund Ins. Co., supra,* 6 Cal.App.4th at p. 1056.) "If a substantial relationship exists, courts will presume that confidences were disclosed during the former representation which may have

---

[3]All further references to rules will be to the Rules of Professional Conduct of the State Bar of California unless otherwise specified.

value in the current relationship." (*Truck Ins. Exchange, supra,* 6 Cal.App.4th at p. 1056; *Flatt, supra,* 9 Cal.4th at p. 283.)

■ A different test is utilized where the attorney's conflict arises from simultaneous representations. "The primary value at stake in cases of simultaneous or dual representation is the attorney's duty—and the client's legitimate expectation—of *loyalty,* rather than confidentiality." (*Flatt* v. *Superior Court, supra,* 9 Cal.4th at p. 284, italics in original; *Metro-Goldwyn-Mayer, Inc.* v. *Tracinda Corp., supra,* 36 Cal.App.4th at p. 1839.) " '[R]epresentation adverse to a *present* client must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.' " (*Truck Ins. Exchange* v. *Fireman's Fund Ins. Co., supra,* 6 Cal.App.4th at p. 1056, italics in original.)

"[I]n all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one. [Citations.] [¶] The reason for such a rule is evident, even (or perhaps especially) to the nonattorney. A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship." (*Flatt* v. *Superior Court, supra,* 9 Cal.4th at p. 285.) The strict proscription against dual representation of clients with adverse interests thus derives from a concern with protecting the integrity of the attorney-client relationship rather than from concerns with the risk of specific acts of disloyalty or diminution of the quality of the attorney's representation. (*Developments in the Law—Conflicts of Interest in the Legal Profession* (1981) 94 Harv. L.Rev. 1244, 1295-1302.)

■ In the present case, McKim is in the position of simultaneously representing the Forrests and the corporations they are accused of embezzling from and subjecting to penalties for tax fraud. In the context of the third disqualification motion—the only one before us for review—the corporations are nominal defendants in a shareholder's derivative suit. In such a suit, the corporation, while nominally a defendant, is actually a plaintiff; if the allegations of Ricetti's cross-complaint are proved, the corporations stand to benefit from recovery for the Forrests' wrongful actions. (*Cannon* v. *U.S. Acoustics Corporation* (N.D.Ill. 1975) 398 F.Supp. 209, 213-214.) Current case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud. (*Bell Atlantic Corp.* v. *Bolger* (3d Cir. 1993) 2 F.3d 1304, 1317; *Musheno* v. *Gensemer* (M.D.Pa. 1995) 897 F.Supp. 833, 838; *In re Oracle Securities Litigation* (N.D.Cal. 1993) 829 F.Supp.

1176, 1188; *Messing v. FDI, Inc.* (D.N.J. 1977) 439 F.Supp. 776; *Lewis v. Shaffer Stores Company* (S.D.N.Y. 1963) 218 F.Supp. 238, 239.)

We are aware of one California case holding that, prior to an adjudication that the corporation is entitled to relief against its officers or directors, the same attorney may represent both. (*Jacuzzi v. Jacuzzi Brothers, Inc.* (1966) 243 Cal.App.2d 1, 35-36 [52 Cal.Rptr. 147].) *Jacuzzi* has been criticized as illogical and against the weight of authority. (*In re Oracle Securities Litigation, supra,* 829 F.Supp. at p. 1188, fn. 8; Patton, *Disqualification of Corporate Counsel in Derivative Actions: Jacuzzi and the Inadequacy of Dual Representation* (1979) 31 Hastings L.J. 347.) As stated in *Lewis v. Shaffer Stores Company, supra,* 218 F.Supp. at page 239, the merits of the action (which will determine whether there is in fact adversity between the corporation and directors in a derivative suit) should not be determined in the context of a motion to disqualify counsel. Here, under the allegations of the cross-complaint, it is clear that the interests of the corporations and the Forrests are adverse.

Respondents/cross-appellants (the Forrests and corporations)[4] urge there is no conflict between the Forrests' interests and the corporations' with respect to either the embezzlement claims or the tax fraud issues. On the first point, they take the position all the distributions they received from the corporations were shared in equal measure by Ricetti, having been agreed to by the three directors/shareholders of the corporations. While this is the picture painted by Sandra Forrest's deposition testimony and the Forrests' declaration, inferentially supported by their other evidence of Ricetti being seen in possession of significant sums of cash, Ricetti denied ever receiving cash distributions from the corporations or knowing the Forrests were receiving cash distributions. Which side of this story is to be believed has yet to be determined in this action. As for the tax fraud issues, the Forrests concede the corporations could be liable for taxes, interest and penalties, yet argue there is no conflict because the officers would be personally liable to the same extent as the corporation, and the Forrests hired accountants to correct the payroll reporting. The latter point does not resolve the question whether the corporation will be liable for penalties, nor whether accountants hired by the Forrests will be sufficiently independent to properly resolve the financial issues. The former point assumes Ricetti's knowledge of the Forrests' conduct, a matter as yet undetermined. The court did not abuse its

---

[4]The "Respondents' and Cross-Appellants' Brief" was filed by McKim on behalf of the Forrests, who did not file a notice of appeal from the trial court's order. Some of the arguments made are clearly on behalf of the corporations, which did file a notice of appeal, and the brief makes no attempt to distinguish which arguments are made on behalf of which party. The "Cross-Appellants' Reply Brief" was filed by McKim on behalf of the corporations.

discretion in finding an actual conflict between the interests of the Forrests and the corporations.

Respondents urge any conflict was legally waived by the Forrests' consent, as shareholders of the corporations, to the dual representation. Rule 3-600(E), provides: "A member representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310. If the organization's consent to the dual representation is required by rule 3-310, the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members." According to respondents, the Forrests, as holders of two-thirds of the corporations' stock, could and did validly consent to McKim's representation on behalf of the corporations.

The referee's view on this issue was succinctly stated in its order: "[I]n the face of a derivative cause of action, to permit the FORRESTS to waive the conflict on behalf of the corporations would be the equivalent of denying Mr. RICETTI's derivative claim out of hand—a legally impermissible action." Clearly, under rule 3-600, the Forrests could not consent to the representation on behalf of the corporations in their capacity as directors of the corporations. In the circumstances here, where the only shareholders of the corporations are also the directors involved in the controversy, to allow the shareholders to consent on behalf of the corporation would render rule 3-600 meaningless.

Indeed, commentators and case law alike have concluded that reliance on consent is ill founded in the context of derivative litigation. Thus, in *Cannon v. U.S. Acoustics Corporation, supra*, 398 F.Supp. at page 216, footnote 10, the court stated: "[Ethical Consideration] 5-16 [of the American Bar Association's Code of Professional Responsibility] provides that in some circumstances multiple representation may be permissible if both clients are fully informed of potential conflict and the parties consent to the representation. This consent rationale seems peculiarly inapplicable to a derivative suit, because the corporation must consent through the directors, who, as in the present case, are the individual defendants. See Opinion 842, Association of the City of New York Committee on Professional Ethics (Jan. 4, 1960), 15 Record N.Y.C.B.A. 80 (1960)." *Messing v. FDI, Inc., supra*, 439 F.Supp. at page 784, in discussing an alleged conflict between representation of corporate directors charged with fraud and directors charged with negligence, noted: "However, in contrast to the question of the joint representation of the directors and the corporation, here there are individuals who are capable of informed consent and who can act independently of each other." In *In re*

*Oracle Securities Litigation, supra*, 829 F.Supp. at page 1189, the court stated: "It is also clear that an inanimate corporate entity, which is run by directors who are themselves defendants in the derivative litigation, cannot effectively waive a conflict of interest as might an individual under applicable professional rules such as [rules] 3-600(E) and 3-310." One commentator noted: "But it would be meaningless in derivative litigation to allow the consent of the parties defendant to exculpate the practice of dual representation, for most often it would be the defendant directors and officers who would force the corporation's consent." (Comment, *Independent Representation for Corporate Defendants in Derivative Suits* (1965) 74 Yale L.J. 524, 528.)

█ Respondents also assert the disqualification motion should have been denied because it was not timely filed. They base this contention on the assertion that Ricetti "was aware of the cash withdrawals nearly a year before making the motion." No citation to the record is provided to clarify this assertion. We presume it is based on the fact that Sandra Forrest discussed the cash distributions and payments upon which Ricetti's allegations of embezzlement and tax fraud are based in her deposition in April 1995, but the motion to disqualify McKim based on Forrests' admissions was not filed until January 1996.

The record reflects that Ricetti filed his first motion to disqualify McKim in December 1994, within weeks of substituting in his new attorney. This motion, based on different grounds from the one before us for review, was denied. In April 1995, Sandra Forrest's deposition was taken. At this time, the parties entered into a settlement agreement, which was subsequently repudiated in July 1995. According to Ricetti's attorney, preparation of the deposition transcript was delayed as part of the settlement agreement. Ricetti then attempted unsuccessfully to have the court enter judgment on the settlement agreement. In November 1995, the court denied the motion for judgment on the settlement agreement and Ricetti made a written demand for McKim's withdrawal from representation. McKim refused, Ricetti's attorney ordered transcription of Sandra Forrest's deposition, and the transcript was finalized on December 15, 1995. Ricetti's motion to disqualify based on the conflict between the Forrests and corporations due to the alleged embezzlement and tax fraud was filed on January 19, 1996. The motion was denied on April 1, 1996; Ricetti filed the third motion for disqualification along with his objections to the referee's decision later that month.

Although inexcusable delay may occasion denial of a motion to disqualify counsel, the "delay must be extreme in terms of time and consequence." (*River West, Inc.* v. *Nickel* (1987) 188 Cal.App.3d 1297, 1311 [234 Cal.Rptr.

33].) In *River West*, a defendant moved to disqualify plaintiffs' attorney because the attorney had represented the defendant in a "substantially related" matter some 27 to 30 years before. The motion was filed more than three years after the defendant had knowledge of the conflict, after the attorney had worked more than 3,000 hours on the case, at a cost of some $387,000. The defendant attempted to excuse the delay by claiming there had been no court available to hear the motion due to pending motions for change of venue and judicial disqualification. The reviewing court found the excuse insufficient, as there had been times within the period when a judge would have been available and, in any case, the inability of a court to determine the motion did not excuse the defendant from filing the motion to give notice to the plaintiffs and their attorney of the claimed conflict. (188 Cal.App.3d at p. 1314.)

In *Trust Corp. of Montana* v. *Piper Aircraft Corp.* (9th Cir. 1983) 701 F.2d 85, 87-88, upon which respondents rely, an objection to adverse representation was deemed waived where the objecting party had known of the conflict for two and a half years before seeking disqualification. *Health Maintenance Network* v. *Blue Cross of So. California* (1988) 202 Cal.App.3d 1043, 1064 [249 Cal.Rptr. 220], the other case relied upon by respondents, is inapposite as it found a former client had waived objection by impliedly consenting to the adverse representation. The only discussion of the issue of delay as a waiver of a disqualification motion was the following statement: "Although a waiver of an objection to an opposing attorney by reason of a disqualifying conflict of interest *will normally not be presumed* merely because of delay in raising such objection, a client or former client may consent to an attorney's acceptance of adverse employment and such consent may be implied by conduct." (202 Cal.App.3d at p. 1064, italics added.)

In the present case, the evidence supports the trial court's implied finding that any delay was insufficiently extreme to warrant denial of the disqualification motion. Respondents had notice from the outset of Ricetti's representation by independent counsel that Ricetti wished to disqualify McKim. Ricetti's second motion to disqualify was based upon Sandra Forrest's statements in her April 1995 deposition, after which the parties entered into a settlement agreement. As explained in Ricetti's attorney's November 1995 letter to McKim, Ricetti was willing to accept McKim's representation of the Forrests and corporations during the time the parties tried to effectuate a settlement. Once the settlement was repudiated, Ricetti's attempt to have the court enforce it failed, and McKim rejected Ricetti's demand that he withdraw as counsel for the Forrests and corporations. Ricetti then obtained the deposition transcript and filed the motion to disqualify. The third motion to disqualify was filed within weeks of the denial of the second one. Given the history of this case, respondents and their attorney could not have been

misled into thinking Ricetti consented to the adverse representation. Respondents have suggested no extreme time delay or extreme prejudice such as motivated the courts in *River West* and *Health Maintenance Network.*

■ Finally, Ricetti argues the trial court erred in failing to disqualify McKim from representing the Forrests as well as the corporations. Relying primarily on *Flatt* v. *Superior Court, supra,* 9 Cal.4th 275 and *Truck Ins. Exchange* v. *Fireman's Fund Ins. Co., supra,* 6 Cal.App.4th 1050, Ricetti claims the actual conflict between the interests of the Forrests and the corporations required that McKim take no further part in the litigation.

In *Truck Ins. Exchange,* Crosby, Heafey, Roach & May (Crosby), the law firm contacted to represent Truck Insurance Exchange (Truck) in litigation against Fireman's Fund Insurance Company (Fireman's Fund) and others discovered it had been defending an entity related to Fireman's Fund in two wrongful termination suits. Crosby asked Fireman's Fund if it objected to the law firm representing Truck in the insurance coverage case and, in the alternative, offered to withdraw from the wrongful termination cases. Fireman's Fund objected to the concurrent representation and stated it wished to have the law firm continue its role in the wrongful termination cases. Crosby, however, accepted representation of Truck and moved to withdraw from the wrongful termination cases. Fireman's Fund filed a motion to disqualify Crosby from representing Truck in the insurance case, viewing the issue as a breach of the duty of loyalty in concurrent representation that required automatic disqualification. Truck maintained that because Crosby had withdrawn from the wrongful termination cases, Fireman's Fund was only the law firm's former client and disqualification was not required because Crosby possessed no confidential information that could be misused to Fireman's prejudice. *Truck Ins. Exchange* rejected Truck's analysis, concluding that "a law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before hearing." (6 Cal.App.4th at p. 1057.)

In *Flatt* v. *Superior Court, supra,* 9 Cal.4th page 275, the court held that an attorney's duty of loyalty to an existing client negated any duty to give advice to a new or prospective client, representation of whom would irreconcilably conflict with the duty of loyalty to the existing client. Discussing the duty of loyalty, the court stated: "So inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it. Thus, in *Truck Ins. Exchange* v. *Fireman's Fund Ins. Co., supra,* 6 Cal.App.4th 1050, the Court of Appeal discussed the aptly named 'hot potato rule,' that is, the bar on curing dual representation conflicts by

the expedient of severing the relationship with the preexisting client. . . . ' "[T]he principle precluding representing an interest adverse to those of a current client is based not on any concern with the confidential relations between attorney and client but rather on the need to assure the attorney's undivided loyalty and commitment to the client. [Citations]." ' (*Id.* at p. 1056.) The court went on to hold that the 'automatic disqualification rule applicable to concurrent representation [cannot] be avoided by unilaterally converting a present client into a former client prior to hearing on the motion for disqualification[.]' (*Id.* at p. 1057 . . . .)" (*Id.* at p. 288.)

Neither *Flatt* nor *Truck Ins. Exchange* considered the issue of dual representation in the context of a shareholder's derivative action. These cases clearly stand for the proposition that dual representation of clients with adverse interests is impermissible (in the absence of informed consent) and requires automatic disqualification. They hold that an attorney may not violate his or her duty of loyalty to an existing client by undertaking representation adverse to that client's interests; they do not, however, hold that the attorney is required to cease representation of *either* client. While that may have been the practical effect of *Truck Ins. Exchange*, as Crosby had withdrawn from representation of the first client before being disqualified from representing the second, this effect is a function of the particular facts of the case. The opinion does not suggest that if Crosby had not so withdrawn it would have been precluded from continuing to represent Fireman's Fund in the wrongful termination cases.

In the present case, McKim did not unilaterally (or otherwise) decide to drop one client in preference for a more favored one. Rather, the court determined McKim could not represent both the Forrests and the corporations—a correct determination as discussed above—and required the corporations to secure independent counsel. This order is consistent with federal authority in the precise circumstance of attorney disqualification in shareholder derivative litigation, which holds that while dual representation of a corporation and its directors is impermissible (at least if the directors are charged with fraud), the attorney who formerly represented both clients may continue to represent the individual ones. (*Musheno* v. *Gensemer, supra,* 897 F.Supp. at p. 838; *Lewis* v. *Shaffer Stores Company, supra,* 218 F.Supp. at p. 239.) These cases are short on reasoning, perhaps because the parties were not contending complete disqualification was required. In *Lewis,* the court stated: "The affidavit submitted by [the law firm representing corporation and directors] states in substance that the firm feels an obligation to defend the officers and directors whom it has advised. This is understandable, and I see no impropriety in their doing so under the circumstances of this case. [Citation.] [¶] Plaintiff indeed does not contend otherwise." (218 F.Supp. at

p. 239.) In *Musheno*, the court stated: "It is unclear whether Plaintiffs seek to disqualify [the attorney] from representing any Defendant in this litigation, or whether they merely seek to prevent the firm from representing [the corporation]. In any event, there is nothing to prevent [the attorney] from continuing to represent the Directors." (897 F.Supp. at p. 838, fn. 5.) In *Messing* v. *FDI, Inc.*, *supra*, 439 F.Supp. at pages 781-783, although the issue was not explicitly addressed, the court held the corporation would be required to obtain independent counsel without suggesting new counsel would also be necessary for the directors.

The reasoning reflected in these decisions is somewhat more extensively addressed in commentary discussing whether the problem of dual representation in the shareholder derivative suit context is better solved by requiring independent counsel for the corporation or for the individual defendants. One author stated: "An alternative solution [to requiring independent counsel for the corporation] might be to require the *insiders* to secure new counsel, thus permitting the corporation to retain its original counsel. But while this procedure removes the outward appearances of dual representation, the substance of the wrong remains. A residual bias in favor of the individual defendants might continue to undermine counsel's judgment. This potential bias would stem from the fact that counsel's first loyalty might remain with the directors and officers of the corporation, who have been his principal contact with the inanimate corporate client in the past. In addition, counsel might fear that rendering advice antagonistic to the insiders' interests would impair future relations with his corporate client. For these reasons, the *Lewis* decision to have the corporation secure new counsel seems the sounder alternative." (Comment, *Independent Representation for Corporate Defendants in Derivative Suits*, *supra*, 74 Yale L.J. at pp. 533-534, fn. omitted.) To similar effect: "It has been suggested that the outside lawyer . . . represent the individual defendants, perhaps as [another] means of ensuring that their legal fees are not borne by the corporation. The better rule is to require that outside counsel represent the corporation, while the corporate attorney represents the insider defendant; the question of expenses would be decided separately. This rule recognizes that while the in house attorney is nominally the representative of the corporation, his personal loyalties will inevitably be to the [insider] executives who hired him." (*Developments in the Law—Conflicts of Interest in the Legal Profession*, *supra*, 94 Harv. L.Rev. at p. 1341, fns. omitted.) Interestingly, neither of these authors so much as entertains the possibility of requiring complete disqualification of the attorney who initially represented both the corporation and its directors.

Ricetti argues that the court's order allowing McKim to continue to represent the Forrests while converting the corporations to former clients,

requires violation of rule 3-310(E): "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." Technically, this rule may not even apply as McKim is not *accepting* employment but *continuing* his preexisting representation of the Forrests. Moreover, in the factual circumstances of this case, where McKim has been representing a corporation comprised of three shareholders solely by virtue of his relationship with the Forrests, acting as the majority directors/shareholders, it is impossible to conceive of confidential information McKim could have received from the "corporation" that is different from information he received from the Forrests. We recognize the rule that "[w]here the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory." (*Flatt* v. *Superior Court, supra,* 9 Cal.4th at p. 283.) The rule, however, is based on the need to protect scrupulously against the improper use of confidential information " 'This is the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney. Nor should the attorney have to "engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation." . . .' " (*River West, Inc.* v. *Nickel, supra,* 188 Cal.App.3d at p. 1304, quoting *Global Van Lines, Inc.* v. *Superior Court* (1983) 144 Cal.App.3d 483, 489 [192 Cal.Rptr. 609].) Where, as here, the functioning of the corporation has been so intertwined with the individual defendants that any distinction between them is entirely fictional, and the sole repositories of corporate information to which the attorney has had access are the individual clients, application of the "former client" rule would be meaningless.

The order granting in part and denying in part the motion for disqualification is affirmed.

Haerle, J., and Lambden, J., concurred.