Filed 12/16/21  Ultimate Action v. The November First Partnership CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ULTIMATE ACTION, LLC,<br><br>　　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>THE NOVEMBER FIRST PARTNERSHIP, et al.,<br><br>　　　　Defendants and Respondents. | B308448<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV17040) |

　　　　APPEAL from an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge.  Affirmed in part and reversed in part.

　　　　Wolf, Rifkin, Shapiro, Schulman & Rabkin, Mark J. Rosenbaum and Johnny White for Plaintiff and Appellant.

　　　　Fox Rothschild, Dwight C. Donovan and Jack Praetzellis for Defendants and Respondents.

_____

Plaintiff Ultimate Action, LLC brought this derivative lawsuit on behalf of 357 South Broadway, LLC (South Broadway) to challenge various actions defendants took in managing the company.  Plaintiff challenges the trial court's order denying disqualification of South Broadway's former law firm, Fox Rothschild, from representing defendants in the lawsuit.

The duty of confidentiality generally prevents an attorney from continuing to represent a client if the representation conflicts with the attorney's representation of a previous client in a related matter.  Once the previous client establishes a substantial relationship between the successive representations, the court must disqualify the attorney from representing the second client because the law presumes the attorney received confidential information during the first representation that is relevant to the second.

An exception exists in a derivative lawsuit brought on behalf of a small or closely held company against insiders who run the company.  Because the insiders are already privy to all of the company's confidential information, the second representation has no danger of violating any duty of confidentiality the attorney owes to the company.

Here, some defendants are South Broadway insiders but one, Insignia PMG (Insignia), is not.  Therefore, the court correctly denied disqualification of Fox Rothschild insofar as it represents the insiders, but erred in refusing to disqualify the firm from representing Insignia.  Accordingly, we affirm the court's order in part and reverse in part.

## BACKGROUND

### A.    Prior Representation

Ultimate Action is a 60 percent owner of South Broadway.

2

November First Partnership (November First) owns the other 40 percent, and manages South Broadway.

Scott and Patricia Schwartz indirectly (through their trust) hold a controlling stake in November First.

In early 2020, Ultimate Action negotiated with November First to buy out the latter's 40 percent interest in South Broadway. Fox Rothschild represented South Broadway during the negotiations.

In March and April 2020, Ultimate Action requested information and documents regarding deferred maintenance it discovered while investigating the proposed buyout, stating, "investigations of the Property have uncovered damage and deferred maintenance in excess of $2,000,000, and new matters have arisen which have materially diminished the value of the Property and collectability of rents."

Fox Rothschild declined to provide the requested documents, stating, "Your insistence on learning the ongoing details of the management of [South Broadway] . . . is unwarranted . . . . [¶] Please rest assured that [South Broadway] will continue to be appropriately managed. Going forward, we respectfully request that you direct any further correspondence regarding [South Broadway] to the attention of the undersigned."

Ultimate Action responded: "[Y]our assertion that [South Broadway] is 'appropriately managed' is patently untrue. . . . It has become increasingly clear that [South Broadway] is mismanaged, that Mr. and Mrs. Schwartz have been exploiting their control of the [c]ompany to enrich themselves, and that their caginess about sharing information . . . is rooted entirely in their desire to conceal their own wrongdoing."

**B.    Derivative Lawsuit**

On May 5, 2020, Ultimate Action filed the instant derivative lawsuit, which names five defendants, including November First, Scott and Patricia Schwartz, and Insignia, an outside vendor of property management services to South Broadway.

In 15 causes of action, Ultimate Action, derivatively on behalf of South Broadway, alleges the Schwartzes and "their instrumentalities" mismanaged South Broadway for several years, committing waste and embezzlement through such devices as insider loans and unfair property management and brokerage contracts with the Schwartzes' closely held entities, including Insignia. Ultimate Action alleges the defendants are alter egos of one another, and Insignia receives above-market fees in breach of November First's fiduciary duties to South Broadway.

**C.    Current Representation**

Insignia is a property manager contracted to manage the commercial property located at 357 South Broadway for the South Broadway company, billing $2,200 per month for this service. Scott and Patricia Schwartz each own 25 percent of Insignia. The record does not disclose who owns the remaining 50 percent interest.

Fox Rothschild represents Insignia and the other defendants in the derivative action except nominal defendant South Broadway.

It is undisputed that Fox Rothschild does not represent South Broadway in the lawsuit, but previously represented it in matters substantially related to those the lawsuit raises.

On September 24, 2020, Ultimate Action moved to disqualify Fox Rothschild due to its conflict of interest in having

4

previously represented South Broadway.  The trial court denied the motion without making factual findings, and Ultimate Action appeals.

On appeal, Ultimate Action abandons its disqualification request as to all defendants but Insignia.

## DISCUSSION

### A.  Standard of Review

We review a trial court's decision on a motion to disqualify counsel for abuse of discretion.  (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)  "As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact; 'the reviewing court should not substitute its judgment for . . . express or implied [factual] findings [that are] supported by substantial evidence. [Citations.]' [Citation.]  As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion." (*Ibid.*)  The court's application of the law to the facts is reversible only if arbitrary and capricious.  (*Ibid.*)  We presume the record contains evidence supporting every express and implied finding of fact.  (*Marriage of Fink* (1979) 25 Cal.3d 877, 887.)

### B.  Adequacy of the Court's Statement of Decision

Ultimate Action preliminarily argues that the trial court's failure to indicate its reasoning on the record itself compels reversal.  We disagree.

In deciding disqualification motions, "trial judges must indicate on the record they have considered the appropriate factors and make specific findings of fact when weighing the conflicting interests involved." (*Smith, Smith & Kring v. Superior Court* (*Oliver*) (1997) 60 Cal.App.4th 573, 582.)

5

However, when the issue of disqualification should be decided as a matter of law because there are no material disputed facts, specific factual findings are not required. (*Hetos Investments, Ltd. v. Kurtin* (2003) 110 Cal.App.4th 36, 52.)

As will be seen, here, all material facts are undisputed.

## C.     Rules Governing Attorney Disqualification

Rule 3-310 of the Rules of Professional Conduct requires that attorneys avoid representing successive clients with conflicting interests without the clients' informed written consent.[1]

"The issue of disqualification 'ultimately involves a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. *The paramount concern, though, must be the preservation of public trust in the scrupulous administration of justice and the integrity of the bar*. The recognized and important right to counsel of one's choosing must yield to considerations of ethics that run to the very integrity of our judicial process.' " (*Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1838.)

In cases of successive representation, " 'the chief fiduciary value jeopardized is that of client confidentiality' "—the former client's right to rely on the confidentiality of communications with his or her former counsel. The rule in such cases is that

---

[1] Rule 3-310 provides in pertinent part: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." (Rules of Prof. Conduct, rule 3-310(E).)

6

disqualification of the attorney is required, but only if there is " 'a "substantial relationship" ' " between the former and the current representations, which gives rise to a presumption that confidential communications passed between them. (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 161.)

"A 'substantial relationship' exists whenever the 'subjects' of the prior and the current representations are linked in some rational manner. [Citations.] 'Thus, successive representations will be "substantially related" when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues.' " (*Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 480 (*Fiduciary Trust*).)

Here, undisputed evidence showed that Fox Rothschild represented South Broadway in its response to inquiries by Ultimate Action about malfeasance and insider dealing, and now, without the company's consent, represents Insignia in a lawsuit where Insignia is alleged to have participated in those same insider dealings. (Although South Broadway is a nominal defendant in the derivative action, thus nominally on Insignia's side, in a derivative lawsuit the company is actually a plaintiff; if the allegations against the defendants are proved, South Broadway stands to benefit from recovery for the defendants' wrongful actions. (*Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 74.)) Because the subjects of the prior and successive

7

representations concerned the same insider dealings, they are substantially related.

"Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory . . . ." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283; see also *Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1056 ["If a substantial relationship exists, courts will presume that confidences were disclosed during the former representation which may have value in the current relationship"].)

This is so regardless of the likelihood that confidential information will be disclosed to the second client, and of the likely import of such disclosure. "[T]he only question is whether there is a substantial relationship between the subject of the prior representation and the subject of the current representation. If the answer is yes, 'access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is presumed and disqualification of the attorney's representation of the second client is mandatory.' " (*Fiduciary Trust*, *supra*, 218 Cal.App.4th at p. 479.) "The conclusive presumption also avoids the ironic result of disclosing the former client's confidences and secrets through an inquiry into the actual state of the lawyer's knowledge and it makes clear the legal profession's intent to preserve the public's trust over its own self-interest." (*H. F.*

*Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1453.)

Because Fox Rothschild has accepted employment adverse to its former client without the client's consent, it must be disqualified from that representation unless an exception to Rules of Professional Conduct, rule 3-310(E) exists.

Relying on three cases, Insignia argues, and the trial court found, an exception to disqualification under Rules of Professional Conduct, rule 3-310(E) exists where there is no danger of the attorney imparting confidential information to the successive clients because that information was obtained solely from those clients.

In *Forrest v. Baeza, supra,* 58 Cal.App.4th 65, a brother and sister and the sister's husband each owned one-third of a corporation, which was represented by an attorney. After a falling out, the brother sued his sister and her husband derivatively on behalf of the corporation. The First District held that the attorney's continuing representation of his individual shareholder clients was permissible because when "the functioning of the corporation has been so intertwined with the individual defendants that any distinction between them is entirely fictional, and the sole repositories of corporate information to which the attorney has had access are the individual clients, application of the 'former client' rule would be meaningless." (*Id.* at p. 82.)

In *Beachcomber Management Crystal Cove, LLC v. Superior Court* (2017) 13 Cal.App.5th 1105, the managing members of a limited liability company had exclusive rights to manage the company. In a derivative action brought on the company's behalf, the Fourth District vacated the trial court's

9

disqualification order and remanded the matter for a determination whether the derivative defendants "were insiders subject to the *Forrest* rule." (*Id.* at p. 1123.)

In *Ontiveros v. Constable* (2016) 245 Cal.App.4th 686, a corporation was held by two shareholders. When the minority shareholder sued the corporation and the majority shareholder, both were represented by the same attorney. When the action changed into a derivative action midstream, the trial court disqualified the attorney. Applying the *Forrest* exception to the rule of mandatory disqualification, the Fourth District reversed the attorney's disqualification as it pertained to the majority shareholder, noting that because there was no confidential information counsel could have received from the corporation different from what it received from the majority shareholder, there was no danger counsel would breach his duty of confidentiality to the corporation. (*Ontiveros*, at p. 700.)

Here, it is undisputed that any confidential information supplied to Fox Rothschild during its period of prior representation came from Scott and Patricia Schwartz, the co-trustees of the Schwartz Family Trust, the managing general partner of South Broadway's managing member.

The Schwartzes own 50 percent of Insignia, which unlike the parties in *Forrest*, *Beachcomber*, and *Ontiveros*, is not a member, manager or shareholder of South Broadway but an independent contractor providing property management services to a property the company owns. Insignia also has two other owners, and no evidence cited below or urged on appeal indicates these owners supplied confidential information to Fox Rothschild. Therefore, in representing Insignia, Fox Rothschild could possibly impart to a non-insider confidential information previously

10

obtained from South Broadway.  (See *Civil Service Com. v. Superior Court* (1984) 163 Cal.App.3d 70, 79 [the former client "must have no fear that information disclosed to or obtained by the attorney in the course of the representation will in some way later be used against the client"].)

Accordingly, the *Forrest* exception to mandatory disqualification under Rules of Professional Conduct, rule 3-310(E) does not apply with respect to Fox Rothschild's representation of Insignia, and the firm must be disqualified from that representation.  (See *People ex rel. Deukmejian v. Brown* (1981) 29 Cal.3d 150, 155 ["subsequent representation of another against a former client is forbidden not merely when the attorney *will* be called upon to use confidential information obtained in the course of the former employment, but in every case when, by reason of such subsequent employment, he *may* be called upon to use such confidential information"].)

Insignia argues that the possibility of Fox Rothschild communicating confidential information to Insignia is "far-fetched."  Perhaps so, but it is "the possibility of the breach of confidence . . . that triggers disqualification" (*Woods v. Superior Court* (1983) 149 Cal.App.3d 931, 934), not the probability.

Insignia argues it and the Schwartzes are indistinguishable because it is being sued solely as their alter ego.  Even if true, the allegation that Insignia and the Schwartzes are alter egos for purposes of liability does not establish that they are indistinguishable for purposes of Fox Rothschild's conflict of interests.

Insignia argues that it would not matter whether Fox Rothschild imparts confidential information to Insignia because the Schwartzes are already in a position to convey such

information to Insignia.  But Rules of Professional Conduct, rule 3-310 applies regardless of the second client's potential non-attorney sources of confidential information, and affords no exception to the attorney for the conduct of others.  In determining whether disqualification is proper we consider only whether a conflict of interest exists, not the extent of the harm it might cause.  (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.*, *supra*, 229 Cal.App.3d at p. 1453.)

## DISPOSITION

The court order is reversed as to Insignia and otherwise affirmed.  Appellant is to recover its costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

CRANDALL, J.*

---

*Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12