Filed 12/19/25  Ghilezan v. Huber CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL GHILEZAN, | D084588 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2023-00028348-CU-FR-NC) |
| JAMES HUBER et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, William Y. Wood, Judge.  Affirmed.

Tencer Sherman, Philip C. Tencer; Global Legal Law Firm and Joshua J. Herndon for Defendants and Appellants.

Cabanday Law Group and Orlando F. Cabanday for Plaintiff and Respondent.

MEMORANDUM OPINION

Christopher Dryden, James Huber, Global Legal Resources LLP dba Global Legal Law Firm LLP (Global), Gracehollandcannon, LLC and CRD Legal Services, Inc. (collectively, defendants) appeal from the trial court's

order granting Micheal Ghilezan's motion to disqualify Global as counsel for the defendants based on the existence of a conflict of interest. Finding no error, we affirm.

## I.

### *Background*

Global is a three-partner limited liability partnership. The three partners were Ghilezan, Dryden and Huber. Four years into the partnership, Ghilezan came to believe Dryden and Huber had committed "bad acts" against the partnership, including "diverting significant amounts of money from [Global] to themselves" and/or Gracehollandcannon, LLC and CRD Legal Services, Inc., companies they allegedly control.

On December 12, 2022, Ghilezan gave Dryden and Huber notice of his disassociation from Global. The same day, Ghilezan filed a lawsuit against the defendants. In his operative complaint,[1] Ghilezan asserted causes of action for fraud, breach of fiduciary duty, aiding and abetting of breach of fiduciary duties, and dissolution. He also asserted derivative causes of action on behalf of Global for an accounting, sale of partnership assets (appointment of a receiver), and declaratory relief seeking the return of resources unlawfully diverted by defendants from Global. Global was named both as a nominal plaintiff and a nominal defendant.

Defendants retained Global, and its associate Joshua Herndon, to represent them and to prosecute a cross-complaint; this included representing Global as the nominal defendant and nominal plaintiff. Ghilezan moved to disqualify Global (and Herndon) from representing any

---

[1] The operative complaint was not included in the record on appeal. Our description of the complaint's allegations derives from the underlying motion to disqualify and the trial court's minute order.

defendant in any capacity. He argued Global could not represent both the "bad actors"—Dryden, Huber and their companies—and itself, the "entity harmed by the bad actors."

Defendants opposed the disqualification motion. They argued Ghilezan lacked standing to bring a derivative suit because, having disassociated, "he is not a partner"; he had not properly pled a derivative suit; he had "no legally cognizable injury"; and there is no conflict because the interests of Huber, Dryden and Global "are aligned." Finding Ghilezan had standing to bring a derivative action against the partnership, the trial court disqualified Global based on a conflict of interest.[2]

## II.

### *Discussion*

Defendants appeal from the trial court's order disqualifying Global. As they did below, defendants frame the issue on appeal as whether Ghilezan had standing to assert the derivative causes of action despite his disassociation from the partnership. Defendants' focus is off the mark. In a motion to disqualify, the standing that concerns us is standing to disqualify an attorney. And standing to disqualify an attorney simply requires that the moving party shows "an invasion of a legally cognizable interest." (*Great*

---

[2] Ghilezan also moved to disqualify Philip C. Tencer of Tencer Sherman, LLP from representing any of the defendants. The trial court ruled Tencer Sherman "may not represent the interests of both the partnership and [the related companies] as well as the individual partners." Tencer Sherman then elected to represent Global and the related companies. Consequently, the court found Tencer Sherman disqualified from representing the individually named defendants and cross-complainants but not Global or the related companies. Defendants do not allege the court errored as to this ruling. We grant defendants' motion to augment the record to include the trial court's subsequent September 26, 2024 minute order clarifying its ruling as to Tencer Sherman and defendants' motion seeking clarification.

*Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1357 (*Great Lakes*).) As we explain, Ghilezan had standing to bring his motion and the trial court's disqualification of Global was proper.

"Our review requires us to consider whether there is a legal basis for the trial court's disqualification order." (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1354.) Because we review the trial court's order and not its reasoning, we affirm an order if it is correct on any theory apparent from the record. (*Blue Chip Enterprises, Inc. v. Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712.) "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*).) In deciding whether the trial court abused its discretion, we are bound by the substantial evidence rule. When the trial court resolves factual disputes in ruling on a motion to disqualify counsel, such findings are reviewed for substantial evidence; where the facts are undisputed, whether to order disqualification is a legal question. (*Id.* at pp. 1143–1144.) Because standing is a legal question, "[w]e . . . review the trial court's exercise of discretion as a question of law in light of the relevant legal principles." (*Great Lakes*, at p. 1354.)

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' " (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145; see Code Civ. Proc., § 128, subd. (a)(5).) "Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. The paramount concern

4

must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*SpeeDee Oil*, at p. 1145 [cleaned up].)

One fundamental value of our legal system is the attorney's obligation of loyalty. As our high court explained, "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process. The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel. The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship. Therefore, if an attorney—or more likely a law firm—simultaneously represents clients who have conflicting interests, a more stringent per se rule of disqualification applies. With few exceptions, disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other." (*SpeeDee Oil*, *supra*, 20 Cal.4th at pp. 1146–1147 [cleaned up].)

"The most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation. Such patently improper dual representation suggests to the clients—and to the public at large—that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences. However, the attorney's actual intention and motives are immaterial, and the rule of automatic disqualification applies. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but also to keep honest attorneys from having to choose between conflicting duties, or being tempted to reconcile conflicting

5

interests, rather than fully pursuing their clients' rights. The loyalty the attorney owes one client cannot be allowed to compromise the duty owed another." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1147 [cleaned up].)

These important principles are embodied by California Rules of Professional Conduct, Rule 1.7,[3] which Ghilezan cited in support of his disqualification motion. The rule provides, "[a] lawyer shall not, without informed written consent from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter." (Rule 1.7(a).) Paragraph (d) provides "[r]epresentation is permitted under this rule only if . . . [¶ ] the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." (Rule 1.7(d)(3).) Stated another way, a lawyer may not represent directly adverse clients in the same matter when one client has asserted a claim against the other client. This conflict cannot be waived, even with the affected client's informed consent. (*Ibid.*; *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1147.) Instead, "[a]n attorney who seeks to simultaneously represent clients with directly adverse interests in the same litigation will be automatically disqualified." (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846 (*Cobra Solutions*).)

Here, Global's interests as the harmed entity and the nominal plaintiff are clearly adverse to Dryden, Huber and their companies—the defendants alleged to have caused that harm. Although the trial court evaluated whether Ghilezan had standing to bring a derivative action against the

---

[3] All further undesignated rules references are to the California Rules of Professional Conduct.

6

partnership, the court granted the disqualification motion on the basis that Ghilezan sought damages for *harm to Global* resulting from the derivative causes of action. It explained the conflict of interest arises from the fact that Ghilezan's complaint alleged Dryden and Huber "divested a partnership opportunity to themselves" and their related companies "to the detriment of [Global] when they purchased the Encinitas [b]uilding using diverted funds from Global," and Ghilezan was seeking "an order directing the sale of [Global's] property and effects, including the total liquidation of Grace[hollandcannon] LLC and the sale of the Encinitas building."

Thus, "[t]he nature of [Ghilezan's] derivative claims, which sound in fraud, demonstrates that an actual conflict of interest existed" (*Ontiveros v. Constable* (2016) 245 Cal.App.4th 686, 697) between Global and Dryden and Huber. (Cf. *Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 74 ["Current case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud."]; *Gong v. RFG Oil, Inc.* (2008) 166 Cal.App.4th 209, 216 [majority shareholder and corporation were adverse where derivative claims alleged he "purchased real property in [his] own name, but used corporate funds to discharge the promissory note"]; *Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477, 489 [in a derivative suit alleging one member of a group of limited liability companies misappropriated income and conveyed real estate assets to an entity separately owned by that member, the member and his entity had "interests adverse to the limited liability companies with respect to certain real estate and rental income"].) Because Global seeks to simultaneously represent clients (itself and the alleged bad actors) with directly adverse interests in

7

the same litigation, it is automatically disqualified. (Rule 1.7(d)(3); *Cobra Solutions, supra*, 38 Cal.4th at p. 846.)

It is not enough, however, for Ghilezan to show that Global's duty of loyalty will be compromised because Global and the remaining defendants have adverse interests in the litigation. Without more, any harm to defendants stemming from a breach of the duty of loyalty by their attorneys is "of no concern" to Ghilezan. (*Great Lakes, supra*, 186 Cal.App.4th at p. 1358.) Rather, Ghilezan must demonstrate he has standing to disqualify Global by showing "an invasion of [his own] legally cognizable interest." (*Id.* at p. 1357.) Here, as the trial court found, defendants "concede" Ghilezan "has an ownership interest in [Global]," notwithstanding his notice of dissociation, and the amount of his ownership interest was an issue, among others, to be determined. If Global does not fully pursue its interests because it also represents the "bad actors" alleged to have harmed it, then Ghilezan's interests are harmed. Ghilezan has a right to the buyout of his partnership interest following his disassociation. (Corp. Code, §§ 16405, subd. (b)(2)(B), 16701.) His buyout price is "the amount that would have been distributable to [him] . . . if, on the date of disassociation, the assets of the partnership were sold." (Corp. Code § 16701, subd. (b).) If, as alleged, the assets of Global should have been greater but were diverted to Dryden and Huber and their related companies to the detriment of Global, the value of Ghilezan's ownership interest is affected. We conclude this is a sufficient invasion of a legally cognizable interest to confer him standing to disqualify counsel.

## DISPOSITION

The court's order is affirmed. Ghilezan is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

DO, J.

WE CONCUR:


IRION, Acting P. J.


RUBIN, J.