Filed 2/18/16  Certified for Publication 3/14/16 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GUADALUPE A. ONTIVEROS,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>KENT C. CONSTABLE et al.,<br><br>      Defendants and Appellants. | D066412<br><br><br><br>(Super. Ct. No. ECU07414) |

APPEAL from an order of the Superior Court of Imperial County, Christopher W. Yeager, Judge.  Affirmed in part, reversed in part.

Moskowitz Law Group and Karen Moskowitz; Law Offices of Thomas M. Regele and Thomas M. Regele for Defendants and Appellants.

Law Office of Charles L. Murray III and Charles L. Murray III for Plaintiff and Respondent.

Guadalupe Ontiveros, as the minority shareholder in Omega Electric, Inc. (Omega), sued majority shareholder Kent Constable, his wife (Karen Constable), and

Omega,[1] asserting direct and derivative claims arising from a dispute over management of Omega and its assets. Karen Moskowitz and Thomas Regele (together, Counsel) represented all the defendants in the litigation. Ontiveros moved to disqualify Counsel on the basis they could not simultaneously represent all the defendants because his derivative claims against Omega rendered Omega and the Constables adverse to each other. The trial court granted Ontiveros's motion and disqualified Counsel from representing any of the defendants.

On appeal, defendants contend the trial court erred by disqualifying Counsel altogether. Alternatively, defendants contend the court should have allowed Counsel to continue representing only the Constables. Apart from the merits of Ontiveros's motion, defendants also contend the trial court should have denied it on the basis Ontiveros did not file it until 16 months after he became aware of Counsel's alleged conflict.

For reasons we will explain, we affirm the order disqualifying Counsel as to Omega, but reverse as to the Constables.

FACTUAL AND PROCEDURAL BACKGROUND

*The Underlying Disputes*

Ontiveros, Kent, and nonparty Ray Leckband worked together as electricians at Cal Energy Generation during the 1990's. By 2001, Leckband had retired, Ontiveros had taken a new job at the Imperial Irrigation District (District), and Kent was trying to start

---

[1]     We will refer to Kent and Karen Constable individually by their first names, and collectively as "the Constables." We will refer to the Constables and Omega collectively as "defendants."

2

his own electrical company. The three agreed to invest in and form an electrical contracting venture that eventually became known as Omega. Leckband, Kent, and Ontiveros were Omega's shareholders, directors, and officers.

Omega initially operated under Leckband's electrical contractor's license. In exchange, Leckband received a 20 percent share of Omega's original stock and other benefits. Kent received a 40 percent share of Omega's original stock and served as its president and CEO, overseeing its day-to-day operations. Kent worked exclusively for Omega. Ontiveros also received a 40 percent share of Omega's original stock.

In 2009, Kent and Ontiveros discussed the possibility of purchasing certain real property as equal owners, with the expectation that they would improve the property and lease it to Omega. Ontiveros contends he and Kent agreed to the deal and that he made a 25 percent down payment of $15,000. Kent contends he and Ontiveros never agreed to the deal, so he purchased the property himself and took title in his and Karen's names. The Constables then leased the property to Omega, which paid for certain improvements to the property.

Kent appointed his son (then a full-time college student at the University of Arizona) corporate secretary of Omega. Omega paid the son approximately $12,000 between May 2011 and August 2012. Omega also paid the Constables' daughter approximately $14,000 between December 2009 and June 2011. Ontiveros contends the Constables' children did no work to earn these payments.

Kent understood that when Omega became a viable business, Ontiveros would leave his job at the District, obtain his electrical engineering license, and work full-time

3

at Omega. That never happened. Kent considered Ontiveros's contributions to Omega over the years to be inadequate in light of Ontiveros's $100,000 annual salary from Omega. When Ontiveros did not accede to Kent's ultimatum that he leave his District job and join Omega full-time, Kent purchased Leckband's 20 percent share of Omega and became a licensed electrical contractor.

In late October 2012, Kent caused Omega to pay a $10,000 retainer to Counsel ostensibly to fund Counsel's representation of Kent in his developing dispute with Ontiveros. According to Kent, he did not intend to retain Counsel on Omega's behalf; Omega already had corporate counsel who continue to represent it on matters unrelated to this litigation. Counsel had not previously represented Omega, the Constables, or Ontiveros.

In November 2012, Kent—now a 60 percent shareholder of Omega—caused Omega to stop paying Ontiveros and to terminate his employment.

*The Lawsuit*

In December 2012, Ontiveros filed a verified complaint against Kent and Omega. The complaint asserted a variety of contract and tort claims against Kent. It also asserted a claim against Kent and Omega for involuntary dissolution of Omega. The complaint did not assert any claims against Karen or any derivative claims against Omega.

Within days of receiving the complaint, Kent propounded written discovery to Ontiveros and noticed his deposition.

In late January 2013, Omega retained Counsel to represent it in this lawsuit.

On January 30 and 31, Counsel took Ontiveros's deposition on Kent's behalf.

4

In February, Omega first appeared in the lawsuit by moving (together with Kent) to strike portions of the complaint. The motion became moot when Ontiveros filed a first amended verified complaint the same day.

Ontiveros's first amended complaint asserted derivative causes of action against Kent and Omega (as a nominal defendant)[2] to confirm Omega's (as opposed to the Constables') ownership interest in the property and to "have Omega get . . . back from [Kent]'s fraud" (among other things) the money spent acquiring Leckband's 20 percent interest in Omega and rent Omega paid to the Constables for the property. The amended complaint also substituted Karen as a Doe defendant and asserted equitable causes of action against her.

In March, Karen retained Counsel to represent her in this lawsuit.

Omega and Karen noticed Ontiveros's deposition. After Ontiveros did not appear, Omega and Karen successfully moved to compel Ontiveros to appear and were awarded sanctions.

---

[2] "Because a corporation exists as a separate legal entity, the shareholders have no direct cause of action or right of recovery against those who have harmed it. The shareholders may, however, bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so. When a derivative suit is brought to litigate the rights of the corporation, the corporation is an indispensable party and must be joined as a nominal defendant." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108.) " '[A]lthough the corporation is made a defendant in a derivative suit, the corporation nevertheless is the real plaintiff . . . .' " (*Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1004.)

5

Because Ontiveros was claiming damages for emotional distress and lost income, defendants subpoenaed his medical and employment records. Ontiveros objected to both subpoenas and moved to quash them; defendants opposed. The court denied Ontiveros's motion to quash the employee records subpoena, but granted the motion to quash the medical records because the court's concurrent ruling striking Ontiveros's allegations of emotional distress rendered those documents irrelevant.

In May 2013, Ontiveros filed a second amended verified complaint. Defendants successfully moved to strike and demurred to certain portions of it. Defendants answered the second amended complaint, and Kent and Omega filed a cross-complaint for breach of fiduciary duty, breach of duty of undivided loyalty, conversion, claim and delivery (of corporate property entrusted to Ontiveros), and rescission of any agreement between Kent and Ontiveros regarding the property.

In December 2013, Ontiveros subpoenaed business records from Omega's bank and accountant; both objected to the subpoenas. Defendants also objected that the subpoenas sought confidential records and the parties had not yet entered into a protective order. While the parties were negotiating the terms of a protective order, Ontiveros moved to compel production under the subpoenas and to recover sanctions from defendants. Defendants opposed, but clarified they were amenable to the third parties' production of documents subject to narrowing of certain categories and entry of a protective order. Defendants argued sanctions were inappropriate because Ontiveros's motion was necessitated by the third parties' objections to the subpoenas, not defendants'. (See *Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282, 1290 [a third

6

party " 'simply objecting . . . shifts the burden of going to court to the [propounding] party' "].)  The court ordered the third parties to produce documents and sanctioned Kent and Omega.  The court later entered the parties' stipulated protective order.

In January 2014, Ontiveros demurred to and moved to strike portions of Kent and Omega's cross-complaint.  Kent and Omega responded by filing a first amended cross-complaint, which asserted similar causes of action as the original pleading.

In April 2014, Ontiveros demurred to and moved to strike portions of the first amended cross-complaint.

*The Disqualification Motion*

On April 17, 2014, Ontiveros moved to disqualify Counsel from representing any of the defendants.  Ontiveros argued that despite his lack of an attorney-client relationship with Counsel, he nonetheless had standing to bring the motion as a minority shareholder asserting derivative claims.  (See *Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477, 485-486 (*Blue Water*).)  He further argued disqualification was automatic because Counsel were concurrently representing Omega and the Constables—whose interests were adverse by virtue of the derivative claims—in the same litigation.  Ontiveros asserted Counsel could not withdraw from representing Omega and continue representing the Constables because Counsel undoubtedly "derived sensitive confidential information" regarding Omega's position vis-à-vis the corporation's claims against the Constables.  Finally, Ontiveros argued his delay in bringing the motion is not a factor the court should consider in an automatic-disqualification case, and, in any

7

event, defendants could not establish they would suffer " 'extreme' prejudice" if the court disqualified Counsel.

Defendants disputed Ontiveros's legal standing, and argued Omega and the Constables had expressly consented to Counsel's representation of the other after being fully informed of potential conflicts arising from joint representation. Defendants also argued Ontiveros's delay in bringing the motion was inexcusable, prejudicial, and warranted denial of the motion. Ontiveros filed a reply, defendants filed a surreply, and Ontiveros filed an opposition to the surreply.[3] The trial court then granted Ontiveros's motion.

Without expressly addressing Ontiveros's standing, the court ruled Counsel's concurrent representation of defendants required automatic disqualification. The court rejected defendants' consent argument, reasoning Omega could not validly consent to the joint representation without Ontiveros's consent, which he refused. The court found that because Omega paid Counsel's fees even when Counsel purported to represent only Kent, Counsel truly represented and owed "a primary duty of loyalty to Omega," and owed only a secondary duty to the Constables. As a result of this primary and continuing duty of loyalty to Omega, the court concluded it would be improper to allow Counsel to continue representing the Constables. Finally, the court concluded Ontiveros had not unreasonably delayed in bringing his motion because it was triggered by recent discovery

---

3    The trial court vacated the hearing on Ontiveros's demurrer and motion to strike portions of the first amended cross-complaint pending a final resolution of the disqualification issue.

8

disputes, such as the dispute over Ontiveros's subpoenas to Omega's bank and accountant, and an apparent dispute involving Counsel's representation of Leckband "and apparently caus[ing] him to disobey a deposition subpoena . . . ."[4]

## DISCUSSION

### I. *Disqualification Principles*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee*), quoting Code Civ. Proc., § 128, subd. (a)(5).) "[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." (*Ibid*.) "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*Ibid*.)

Rule 3-310 of the Rules of Professional Conduct[5] provides in pertinent part: "(C) A member shall not, without the informed written consent of each client: [¶] (2) Accept

---

4    The trial court overruled defendants' evidentiary objections to Ontiveros's trial counsel's declarations regarding the deposition dispute.

5    All further rule references are to the Rules of Professional Conduct of the State Bar of California.

9

or continue representation of more than one client in a matter in which the interests of the clients actually conflict . . . . [¶] (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." As we discuss in part II below, rule 3-600 governs the manner in which an organizational client may give its consent.

In evaluating alleged conflicts, a court first looks to whether the challenged representation is concurrent or successive. (See *Gong v. RFG Oil, Inc.* (2008) 166 Cal.App.4th 209, 214 (*Gong*).) The "primary value" at issue in concurrent "or dual representation is the attorney's duty—and the client's legitimate expectation—of *loyalty* . . . ." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284 (*Flatt*).) "The most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation. [Citation.] Such patently improper dual representation suggests to the clients—and to the public at large—that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences. However, the attorney's actual intention and motives are immaterial, and the rule of automatic disqualification applies." (*SpeeDee, supra*, 20 Cal.4th at p. 1147; see *Flatt, supra*, 9 Cal.4th at p. 284 ["in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one"].)

"Where the potential conflict is one that arises from the *successive* representation of clients with potentially adverse interests, the courts have recognized that the chief

fiduciary value jeopardized is that of client *confidentiality*. Thus, where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a '*substantial relationship*' between the subjects of the antecedent and current representations." (*Flatt, supra*, 9 Cal.4th at p. 283.) "Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory . . . ." (*Ibid*.)

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*SpeeDee, supra*, 20 Cal.4th at pp. 1143-1144.)

11

## II.  *Disqualification as to Omega*

Defendants contend the trial court erred by disqualifying Counsel as to Omega. We disagree because Counsel concurrently represented defendants in the same action where an actual conflict existed between them, and Kent alone did not have authority to consent to the conflicting representation on Omega's behalf.

Omega's and the Constables' respective interests were clearly adverse to one another.  Although Ontiveros's complaint nominally named Omega a defendant, Omega "is the real plaintiff" on those claims against the Constables.  (*Patrick v. Alacer Corp., supra*, 167 Cal.App.4th at p. 1004; *Blue Water, supra*, 192 Cal.App.4th at p. 489; *Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 74 (*Forrest*).)  "Current case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud." (*Forrest, supra*, 58 Cal.App.4th at p. 74; see *La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773, 785-786 (*La Jolla Cove*); *Blue Water, supra*, 192 Cal.App.4th at p. 489.)[6]

---

[6]  Defendants cite *Jacuzzi v. Jacuzzi Bros., Inc.* (1966) 243 Cal.App.2d 1 to support the proposition that "prior to an adjudication that the corporation is entitled to relief against its officers, or directors, the same attorney may represent both."  (*Id.* at p. 36, citing *Otis & Co. v. Pennsylvania R. Co.* (E.D.Pa. 1944) 57 F.Supp. 680, 684.)  However, *Jacuzzi* "has been criticized as 'illogical and against the weight of authority' (*Forrest . . . , supra*, 58 Cal.App.4th at p. 75), and later cases bar dual representation in all cases involving actual conflicts (*In re Oracle Securities Litigation* (N.D.Cal. 1993) 829 F.Supp. 1176, 1186, 1188, fn. 8; 1 Witkin, Cal. Procedure [5th ed. 2008] Attorneys, § 139, pp. [198-199]; Patton, *Disqualification of Corporate Counsel in Derivative Actions: Jacuzzi and the Inadequacy of Dual Representation* (1979) 31 Hastings L.J. 347.)"  (*La Jolla Cove, supra*, 121 Cal.App.4th at p. 786, fn. 5; see *Blue Water, supra*,

The nature of Ontiveros's derivative claims, which sound in fraud, demonstrates that an actual conflict of interest existed. Omega's interests were adverse to the Constables' with regard to, at a minimum, ownership of the property and Omega's payment of rent to the Constables. (See, e.g., *Gong, supra*, 166 Cal.App.4th at p. 216 [majority shareholder and corporation were adverse where derivative claims alleged he "purchased real property in [his] own name, but used corporate funds to discharge the promissory note . . . ."]; *Blue Water, supra*, 192 Cal.App.4th at p. 489 [members "have interests adverse to the limited liability companies with respect to certain real estate and rental income"].)

Defendants contend the trial court erred because rule 3-600 allows an attorney to concurrently represent an organization and its shareholders, provided they all knowingly consent to the joint representation. Rule 3-600(E) provides, "A member representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310. If the organization's consent to the dual representation is required by rule 3-310, *the consent shall be given [1] by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or [2] by the shareholder(s) or organization members*." (Italics added.)

_____

192 Cal.App.4th at p. 490 ["Like the *Forrest* court, we decline to follow the lead of *Jacuzzi* because it purports to permit an attorney with an actual conflict to jointly represent a corporation and its insiders even absent a conflict waiver. Such a result is directly contrary to rule 3-310 and rule 3-600."].)

13

Defendants assert the Constables consented to any conflicts on their own behalves, and Kent (as majority shareholder) consented on Omega's behalf. While defendants acknowledge Kent was ineligible to consent on Omega's behalf under rule 3-600(E)'s first provision because he was "the individual or constituent who is to be represented" (*ibid*.), they argue there is no similar limitation on his ability to exercise the second consent provision. The *Forrest* court considered and rejected this argument. (See *Forrest, supra*, 58 Cal.App.4th at p. 76.)

In *Forrest*, one shareholder of two closely held corporations moved to disqualify the attorney who was concurrently representing the corporations and their two other shareholders in a case in which the moving party asserted derivative claims for fraud and breach of fiduciary duty. (See *Forrest, supra*, 58 Cal.App.4th at pp. 68, 72.) In affirming the trial court's disqualification of the attorney as to the corporations, the appellate court explained why the shareholders' attempt to consent to the concurrent representation on the corporations' behalf was ineffective: "Clearly, under rule 3-600, the [jointly represented shareholders] could not consent to the representation on behalf of the corporations in their capacity as directors of the corporations. In the circumstances here, where the only shareholders of the corporations are also the directors involved in the controversy, to allow the shareholders to consent on behalf of the corporation would render rule 3-600 meaningless." (*Forrest*, at p. 76; see *Gong, supra*, 166 Cal.App.4th at p. 216 ["Because an actual conflict exists between [majority shareholder] and [the corporation], [majority shareholder's] purported waiver of the conflict is ineffective."].) The *Forrest* court supported its conclusion with citation to "commentators and case law

14

alike [that] have concluded that reliance on consent is ill founded in the context of derivative litigation." (*Forrest*, at p. 76.)

The *Blue Water* court reached a similar conclusion in the context of standing to seek disqualification. (*Blue Water, supra*, 192 Cal.App.4th at p. 486.) There, one 50-percent member in certain limited liability companies asserted derivative claims for (among other things) fraud and breach of fiduciary duty involving the other 50-percent member. (*Id.* at p. 482.) The plaintiff-member moved to disqualify the attorney who was concurrently representing the other member and the companies. (*Id.* at p. 484.) In concluding the plaintiff-member had "vicarious standing" to seek disqualification, despite his lack of a direct attorney-client relationship with the attorney, the court reasoned, "[a]ny other rule would run the risk of rendering an organization defenseless when it is most vulnerable, i.e., when it is represented by an attorney who has a conflict because he also represents and is beholden to a company insider who injured the company." (*Id.* at p. 486.)

Applying *Forrest* and *Blue Water*, we conclude that because Ontiveros's derivative claims render the Constables' and Omega's interests adverse, Kent's attempt to consent to Counsel's concurrent representation of Omega over Ontiveros's objection was ineffective. Therefore, the trial court did not err in disqualifying Counsel as to Omega.

Defendants mistakenly rely on California State Bar Ethics Formal Opinion No. 1999-153 (State Bar Opinion) to support the proposition that "[a]lthough the 'appropriate constituent' [to consent on the organization's behalf] must be someone other than the constituent being jointly represented, there is no such limitation on 'the shareholder(s)'

15

who may consent under the rule. Thus, under rule 3-600(E) the consent by the shareholder or shareholders may include constituents who are part of the joint representation." (State Bar Opinion, *supra*.) The opinion is unpersuasive because the drafters expressly acknowledge that it "does not involve a derivative action," and "joint representation of a corporation and one or more constituents in derivative actions involves different policy considerations which are beyond the scope of th[e] opinion." (*Id.* at fn. 14.)

Nor are we persuaded by defendants' argument that "there exists a split in authorities regarding joint representation in derivative actions." (Capitalization omitted.) The argument relies entirely on foreign authority. The California authorities we have discussed clearly and uniformly address the issue and support the trial court's ruling as to Omega.

### III. *Disqualification as to the Constables*

The Constables argue that even if the trial court properly disqualified Counsel as to Omega, the court erred by also disqualifying Counsel as to them. We agree.

We first dispose of the Constables' argument that Ontiveros did not have standing to challenge Counsel's continued representation of them. As noted, *Blue Water* held that a shareholder in a derivative lawsuit has vicarious standing to seek disqualification of counsel in the *concurrent* representation context. (*Blue Water, supra*, 192 Cal.App.4th at p. 486.) We see no reason why the rule should be any different when a shareholder who may have legitimate concerns about counsel's duty of confidentiality to the former corporate client seeks disqualification in what has essentially been converted (by

16

disqualification of counsel as to the corporation) into a *successive* representation case. (See *Forrest, supra*, 58 Cal.App.4th at p. 82.) Accordingly, we conclude Ontiveros had vicarious standing to challenge Counsel's continued representation of the Constables in this case.

Turning to the merits, we find the trial court erred by disqualifying Counsel as to the Constables. *Forrest* and *Blue Water* are, again, on point and persuasive. In *Forrest*, the trial court allowed the attorney to continue representing the jointly represented shareholders after the court disqualified counsel as to the corporation. (*Forrest, supra*, 58 Cal.App.4th at p. 72.) In affirming this ruling, the appellate court analyzed the continuing representation as akin to a successive representation scenario in which the shareholders were the current clients and the corporation was the former. (*Id.* at p. 81-82.) The court acknowledged "the rule that '[w]here the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation . . . is *presumed* and disqualification of the attorney's representation of the second client is mandatory.' " (*Id.* at p. 82, quoting *Flatt, supra*, 9 Cal.4th at p. 283.) The *Forrest* court explained this "rule . . . is based on the need to protect scrupulously against the improper use of confidential information." (*Id.* at p. 82.) However, the court concluded this concern was not relevant on the facts before it because the counsel's relationship with the corporation was based solely on his interactions with the jointly represented shareholders such that it was "impossible to conceive of confidential information [counsel] could have received from the 'corporation' that is different from

17

information he received from the [jointly represented shareholders]." (*Ibid*.) Under these circumstances, the court held that where "the functioning of the corporation has been so intertwined with the individual defendants that any distinction between them is entirely fictional, and the sole repositories of corporate information to which the attorney has had access are the individual clients, application of the 'former client' rule would be meaningless." (*Ibid*.)

Similarly, the *Blue Water* court, discussing and applying *Forrest*, affirmed the trial court's order allowing an attorney to continue representing one 50-percent member in certain limited liability companies after the attorney briefly represented both the member and the companies in connection with a demurrer in a derivative lawsuit. (*Blue Water, supra*, 192 Cal.App.4th at pp. 482, 483, 490-491.)

The *Forrest* rationale applies here. Kent and Ontiveros are Omega's only two shareholders. Kent is Omega's president and CEO and is solely in charge of its day-to-day affairs, including selecting and working with counsel. He asserts he and Omega are so intertwined "that there is no confidential information [Counsel] could have received from Omega that is different from the information [Counsel] received from Kent Constable." Ontiveros does not cite any record evidence to the contrary, and the trial court observed during the disqualification hearing that *Forrest*'s "intertwined" scenario "seems to describe what we have here." On this record, Counsel's continued representation of the Constables poses no threat to Counsel's continuing duty of *confidentiality* to Omega.

18

The trial court erred in focusing on Counsel's duty of *loyalty*, not their continuing duty of *confidentiality*. As noted, the duty of loyalty is the proper focus in *concurrent* representation cases; the duty of confidentiality is the proper focus in *successive* representation cases (as became the case here). (*Flatt, supra*, 9 Cal.4th at p. 283-284.) The trial court's efforts to distinguish *Forrest* and *Blue Water* reflect this misunderstanding. The court distinguished *Forrest* on the basis that Kent's use of Omega's funds to pay Counsel's retainer created a primary duty to Omega rather than the Constables. And the court distinguished *Blue Water* on the basis that the attorney's representation of the organizational clients "was relatively brief" in comparison to the ongoing representation of the individual clients. Neither of these distinctions has any bearing on whether Counsel's continued representation of the Constables jeopardizes Omega's confidential information, when Kent was undeniably the "sole repositor[y]" of that information.[7] (See *Forrest, supra*, 58 Cal.App.4th at p. 82.) Therefore, the trial court erred by disqualifying Counsel as to the Constables.

## IV. *Delay*

Defendants contend the trial court erred by finding Ontiveros did not waive his right to seek disqualification of Counsel by waiting 16 months to do so.[8] Ontiveros

---

[7]   Therefore, we need not address the parties' arguments regarding the significance of the sequence in which the attorney-client relationships were formed or whether Kent was entitled to use Omega's funds to indemnify himself for legal fees incurred in connection with the dispute.

[8]   It was actually 14 months. Ontiveros first asserted derivative claims in February 2013 (thereby creating the conflict) and filed his disqualification motion in April 2014.

19

counters that delay is irrelevant in automatic disqualification cases.[9] Alternatively, he argues his delay was not unreasonable and did not create the requisite level of prejudice. We conclude the trial court did not abuse its discretion in finding Ontiveros did not unreasonably delay bringing his motion. Therefore, we need not decide whether delay can ever result in a waiver in automatic disqualification cases.

"[A]ttorney disqualification can be impliedly waived by failing to bring the motion in a timely manner." (*Liberty Nat. Enterprises, L.P. v. Chicago Title Ins. Co*. (2011) 194 Cal.App.4th 839, 844 (*Liberty*).) However, to result in a waiver, the "delay [and] . . . the prejudice to the opponent must be extreme." (*Id*. at p. 845.) Factors relevant to the reasonableness of a delay include the "stage of litigation at which the disqualification motion is made" and the complexity of the case. (*Id.* at p. 846.) Delay can also be "an indication that the alleged breach of confidentiality was not seen as serious or substantial by the moving party," and can suggest "the possibility that the 'party brought the motion as a tactical device to delay litigation.' " (*Id*. at p. 847.) "If the opposing party makes a prima facie showing of extreme delay and prejudice, the burden then shifts to the moving party to justify the delay." (*Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 490.)

---

[9]     *Blue Water* and *Forrest* appear to conflict in this regard. (See *Blue Water, supra*, 192 Cal.App.4th at p. 490 ["[counsel] knowingly agreed to represent conflicting interests at the demurrer hearing. He therefore cannot avoid the rule of automatic disqualification. Consequently, we need not reach the issue of delay."]; *Forrest, supra*, 58 Cal.App.4th at pp. 77-78 [considering delay after finding disqualification was automatic].)

The trial court did not abuse its discretion in finding Ontiveros's delay in bringing his disqualification motion was not "extreme." Although defendants focus on the *age* of the litigation when Ontiveros brought his motion, the proper focus is on the *stage* of the litigation. (*Liberty, supra*, 194 Cal.App.4th at p. 846.) The pleadings were not yet final, as Ontiveros's demurrer to the first amended cross-complaint was still pending; discovery was still in progress; and no trial date was set. By contrast, in *Liberty*—the only California case defendants cite as an example of extreme delay—an entire phase of the trial had been conducted before the disqualification motion was filed. (*Ibid*.)

Even if Ontiveros's delay was extreme, we are not convinced any prejudice to defendants was also extreme. Defendants complain primarily of the time and money they had spent educating Counsel. Our ruling allowing Counsel to continue representing the Constables mitigates this prejudice, a point Counsel acknowledged at the disqualification hearing. (See, e.g., *Gong, supra*, 166 Cal.App.4th at p. 217 [even after one phase of trial, "any prejudice in terms of attorney fees expended for trial preparation can be ameliorated by disqualifying [attorney] only as to [corporation]."].)

The trial court did not err by concluding defendants did not meet their burden of showing Ontiveros waived his right to seek to disqualify Counsel.[10]

---

[10] Defendants contend the trial court erred by denying their objections to Ontiveros's evidence regarding the discovery disputes. We need not address this contention because we have not considered the discovery disputes in reaching our decision.

DISPOSITION

The order disqualifying Counsel as to Omega is affirmed.  The order disqualifying Counsel as to the Constables is reversed.  The Constables are entitled to their costs on appeal.

HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.

Filed 3/14/16

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GUADALUPE A. ONTIVEROS, | D066412 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. ECU07414) |
| KENT C. CONSTABLE et al., | |
| Defendants and Appellants. | |

THE COURT:

The opinion in this case filed February 18, 2016, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to California Rules of Court, rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

BENKE, Acting P. J.