Filed 9/3/25  Temurian v. Rasiah CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ARMEN TEMURIAN et al., | B341195 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 21STCV06515) |
| v. | |
| SATHIYA ARAJ RASIAH et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Theresa A. Beaudet, Judge. Affirmed.

Law Offices of Michael D. Kolodzi and Michael D. Kolodzi for Defendants and Appellants.

No appearance for Plaintiffs and Respondents.

Defendants and appellants Sathiya Araj Rasiah,[1] Ask Milton Group, George Akopian, and Raju Rasiah (collectively, appellants) appeal from the trial court's order granting plaintiffs and respondents Armen Temurian and Luis Amaya's (collectively, respondents)[2] motion to disqualify counsel. Appellants contend the court erred in disqualifying counsel because there was insufficient evidence respondents had an attorney-client relationship with or disclosed confidential information to appellants' counsel. We conclude the court reasonably acted within its discretion in disqualifying counsel and affirm.

## BACKGROUND

**The parties' history and relationship**

### *The parties' agreement*

In 2017, respondent Temurian was working on a concept of developing hardware to enable customers to mine cryptocurrency from their homes. Temurian had no technical expertise, however, and was introduced later that year to appellant Milton Rasiah, who represented himself as a developer with such expertise. Respondents at the time were forming a company called Vista Smart Mining Pool, which would allow their clients to participate in bitcoin mining and a client exchange pool.

---

[1] Sathiya Araj Rasiah is referred to as "Milton Rasiah" in appellants' opening brief and as "Milton Sathia Raj Rasiah" in respondent Armen Temurian's declaration supporting the motion to disqualify counsel. For clarity, Sathiya Araj Rasiah will be referred to here as "Milton Rasiah" or "Rasiah."

[2] Respondents did not file a responsive brief in this appeal.

In January 2018, the parties entered into an agreement in which appellants agreed to develop for respondents a product called "Mini Miners," which were used in mining cryptocurrency. Appellants also agreed to provide an enhanced device called a "Vista ASIC Miner" and create a "Slush Pool" compatible with the Mini Miners that would enable cryptocurrency mining and trading under one domain.

### *Respondents' interactions with appellants' counsel*

Around the time of the parties' agreement, a conflict arose between respondents' company and a third party regarding the customer labels and shipment of the Mini Miners. There was also a conflict with the third party concerning software development for respondents' company, Vista Network Technologies USA doing business as Vista Network (Vista). In April 2018, Rasiah sought advice from Attorney Stephen Feldman, to assist respondents with the conflict. Temurian compiled a list of documents, including confidential information regarding Vista, and e-mailed them to Rasiah to be forwarded to Feldman. The next day, Temurian's business associate sent another e-mail to Rasiah for Feldman's review. This e-mail attached a letter outlining the issues respondents were experiencing and included substantial confidential information.

A few days later, Rasiah forwarded Feldman's e-mail containing his opinion regarding the conflict. Feldman opined that it appeared the third party in Florida engaged in actions giving rise to potential claims for breach of fiduciary duty, conversion, fraud, constructive trust, and accounting. Feldman stated it appeared, however, most of the activity occurred outside of California and it was therefore unlikely California had jurisdiction without a stronger connection to the matter.

Upon receiving Feldman's response, Temurian maintained he had a lengthy and substantive telephone conversation with Feldman. During this conversation, Temurian relayed to Feldman important confidential information about his and Vista's business, the structure thereof, his financial condition, and other related matters. Feldman referred Temurian to counsel in Florida.

### Respondents' lawsuit

In February 2021, respondents filed this lawsuit, alleging appellants failed to deliver 400 operational Mini Miners in breach of their agreement. Respondents' complaint asserted causes of action for breach of contract, fraudulent inducement, money had and received, breach of covenant of good faith and fair dealing, and unfair business practices. Respondents alleged appellants failed to provide Mini Miners that were free of defects or repair the defective units. Appellants also allegedly failed to deliver the Vista ASIC Miners or create the Slush Pool.

In addition, the complaint alleged appellants knew the Mini Miners were underpowered and not compatible with respondents' operating system. Respondents alleged the Slush Pool and currency exchange were supposed to be custom-made for resale to respondents' customers. Appellants allegedly downloaded a snapshot of an existing Slush Pool and currency exchange and passed them off as custom-made products.

Respondents averred, from October 4, 2017, to May 17, 2018, they paid appellants $317,704 for the products and were further damaged by having to issue refunds to customers who acquired Mini Miners. Respondents allegedly suffered severe financial harm, with a permanent loss of at least $341,000.

4

**Procedural history**

*Prior Proceedings*

Shortly after the lawsuit was filed, appellants filed a notice of stay of proceeding as Rasiah had filed for bankruptcy. Respondents moved for relief from the stay and was granted relief as to the second cause of action for fraudulent inducement only. In August 2021, appellants filed a demurrer and motion to strike with respect to the complaint. The motion to strike was partially granted, but the demurrer was entirely overruled. Afterwards, trial was set for February 8, 2023.

In January 2023, respondents filed an ex parte application to continue trial, which was granted. Trial was then rescheduled to July 5, 2023. Shortly afterwards, respondents' counsel moved to be relieved as counsel. The motion was initially denied but later refiled and granted at the end of March 2023. In May 2023, respondents' new counsel, Talin V. Yacoubian, substituted into the case. The parties thereafter stipulated to continue trial. The trial court approved the stipulation and rescheduled trial to January 31, 2024.

On January 10, 2024, respondents filed a motion to disqualify counsel. The next day, respondents filed an ex parte application to continue trial due to their motion to disqualify counsel. The trial court granted the ex parte application, vacated the trial date, and later scheduled a new trial setting conference for July 30, 2024. In September 2024, respondents filed another substitution of attorney removing Yacoubian as their attorney and substituting themselves as attorney of record in propria persona.

### *The motion to disqualify counsel*

Respondents' motion to disqualify counsel was initially set for March 4, 2024. At the hearing, respondents requested an opportunity to obtain the relevant telephone records showing the phone conversation between Temurian and Feldman. Respondents' request was granted. In April 2024, Temurian submitted a supplemental declaration attesting he could not locate the phone records of his conversation with Feldman because he had changed several telephone providers since 2018. However, Temurian maintained he clearly remembers having a phone conversation with Feldman in April or May 2018 because he handwrote the telephone number of the attorney in Florida whom Feldman recommended. Temurian also indicated his business associate, Houry Tartarian, was present during this conversation, which Tartarian corroborated in his declaration submitted in support of the motion.

The motion was ultimately heard on July 30, 2024. Respondents contended Feldman's representation of appellants was materially adverse to respondents' interests because Temurian had a lengthy, substantive telephone conversation with Feldman, who reviewed confidential information concerning respondents' business that was the crux of the lawsuit. Respondents argued they were Feldman's potential clients because he advised them on a course of action, formed opinions on their potential claims, and reviewed their confidential information in his legal capacity. Respondents asserted their counsel, Yacoubian, notified Feldman of a potential conflict when she substituted into the case in May 2023. Respondents noted Feldman denied needing to withdraw from the case but offered to allow respondents to ask questions concerning the issue during

6

Rasiah's deposition. Respondents indicated they agreed to this proposal, but Feldman objected to and instructed Rasiah not to answer questions about the potential conflict during the deposition.

In opposition, appellants asserted respondents had no attorney-client relationship with Feldman. Appellants argued respondents had no contact with Feldman because appellants forwarded respondents' information to Feldman, and he does not recall speaking with respondents. Appellants contended the information was not confidential because it was voluntarily sent to appellants before being forwarded to Feldman. Appellants maintained the information dealt with Vista's dispute with a company in Florida and had nothing to do with the instant case. In addition, appellants posited respondents unduly delayed in bringing the motion. Appellants argued they were prejudiced by this delay because it was late in the litigation, and they had already expended substantial legal fees.

The trial court granted the motion to disqualify counsel, finding respondents demonstrated good cause to disqualify Feldman from representing appellants. The court declined to consider Temurian's and Tartarian's supplemental declarations regarding the missing phone records on procedural grounds. But the court nevertheless found Feldman obtained confidential information adverse to respondents' interests in the litigation. The court noted disqualification may be proper even if an attorney-client relationship was not at issue. The court stressed Temurian's statement that he relayed to Feldman in a lengthy and substantive telephone conversation important confidential information about his and Vista's business, the structure thereof, his financial condition, and other related matters. The court

7

found this confidential information regarding respondents' business was the crux of the lawsuit against appellants.

In addition, in addressing appellants' argument that respondents unduly delayed in bringing the motion, the court concluded there was no "extreme" prejudice to appellants because the trial date had been vacated. The court also found there was no "extreme" delay in moving to disqualify because respondents' counsel had recently substituted into the case and filed the motion only after Feldman objected and instructed Rasiah not to answer questions on the issue during his deposition.

Appellants timely appealed.

## CONTENTIONS ON APPEAL

Appellants assert three main arguments. First, appellants contend the trial court erred because there is no substantial evidence respondents had an existing or potential attorney-client relationship with appellants' counsel, Feldman. Appellants maintain, even if an attorney-client relationship existed, there was no substantial relationship between the facts here and the Florida matter on which Feldman advised respondents. Second, appellants argue there is insufficient evidence respondents disclosed material confidential information to Feldman. Third, appellants assert the motion should have been denied because respondents delayed in bringing it, which resulted in extreme prejudice to appellants.

## DISCUSSION
### I.    Standard of review and applicable law

"A motion to disqualify counsel is vested in the sound discretion of the trial court and we review the court's ruling

under the deferential abuse of discretion standard." (*DP Pham LLC v. Cheadle* (2016) 246 Cal.App.4th 653, 677.) "The party resisting disqualification bears the burden of establishing the facts making disqualification inappropriate, and we 'accept[] as correct all of [the trial court's] express or implied findings supported by substantial evidence.'" (*Rhaburn v. Superior Court* (2006) 140 Cal.App.4th 1566, 1573.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1249.) "Under the abuse of discretion standard, '"[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."'" (*G.F. Galaxy Corp. v. Johnson* (2024) 100 Cal.App.5th 542, 551.)

"'A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."'" (*Ontiveros v. Constable* (2016) 245 Cal.App.4th 686, 694.) "'[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility.'" (*Id.* at 694–695.) "'On the one hand, a court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court. [Citations.] On the other hand, it must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent

client, who must bear the monetary and other costs of finding a replacement.'" (*Zador Corp. v. Kwan* (1995) 31 Cal.App.4th 1285, 1302.)

However, "[w]hen ruling on a disqualification motion, '[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.'" (*Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 47–48.)

## II. Substantial evidence supports the trial court's finding appellants' counsel obtained confidential information

Appellants contend the trial court erred in granting the disqualification motion because insufficient evidence shows Feldman obtained confidential information adverse to respondents' interests as he had no contact or direct written communications with respondents. Appellants argue respondents waived their confidentiality when they voluntarily sent their information to Rasiah. Appellants assert Feldman does not recall any telephone conversation with Temurian, as respondents claim, and no phone records were found despite respondents being granted an opportunity to search for them.

"For purposes of a disqualification motion, '[s]tanding arises from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed.'" (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356 (*Great Lakes Construction*).) "Thus, some sort of confidential or fiduciary relationship must exist or have existed before a party may disqualify an attorney

10

predicated on the actual or potential disclosure of confidential information." (*Ibid*.)

"'"The power [to disqualify counsel] is frequently exercised on a showing that disqualification is required under professional standards governing avoidance of . . . potential adverse use of confidential information."' [Citation.] Even in the absence of an official standard on point, 'counsel may be disqualified where counsel has obtained the secrets of an adverse party . . . because the situation implicates the attorney's ethical duty to maintain the integrity of the judicial process.'" (*Doe v. Yim* (2020) 55 Cal.App.5th 573, 586.) "When a party moves to disqualify opposing counsel based on allegedly improper receipt of privileged or confidential information, the party seeking disqualification has the initial burden to show its adversary possesses confidential information materially related to the proceedings before the court." (*Sundholm v. Hollywood Foreign Press Assn.* (2024) 99 Cal.App.5th 1330, 1341.) "The moving party need not disclose the actual information asserted to be confidential but must provide the court with the nature of the information and its material relationship to the proceeding." (*Ibid*.)

We conclude the trial court did not abuse its discretion in granting the motion to disqualify counsel because substantial evidence supports its finding appellants' counsel obtained confidential information adverse to respondents' interests in this litigation. Temurian attested, during the time the parties entered into their agreement to develop Mini Miners, a conflict arose between his company and a third party in Florida. The conflict concerned customer labels and shipment of the Mini Miners, as well as software development for Vista. Temurian stated Rasiah

11

introduced him to Feldman in April 2018 to assist him with this dispute. Temurian attested he compiled a list of documents in April 2018, including confidential information regarding Vista's business, and e-mailed it to Rasiah to be forwarded to Feldman. The next day, another e-mail—which included a letter addressed to Temurian's former business partner with whom he had the dispute—was sent to Rasiah for Feldman's review. The letter outlined the issues respondents were experiencing and included confidential information about Vista's business.

A few days later, Rasiah forwarded to respondents Feldman's e-mail containing his opinion regarding the dispute. Feldman stated respondents potentially have claims for breach of fiduciary duty, conversion, fraud, accounting, and constructive trust against the third party in Florida. Further, Feldman opined California unlikely has jurisdiction because it appeared most of the activity did not occur within the state. Feldman concluded respondents' best route would be to bring an action in Florida. Feldman also indicated the matter may be brought in federal court under diversity jurisdiction or in the state court. Feldman concluded the e-mail by stating respondents could let him know if they had any questions or needed further information.

Temurian attested, upon receiving Feldman's response, he had a lengthy and substantive telephone conversation with Feldman. Temurian maintained he disclosed to Feldman during this conversation important confidential information about his and Vista's business, the structure thereof, his financial condition, and related matters. Temurian stated Feldman referred him to counsel in Florida. Temurian included his May 25, 2018 e-mail to Feldman's referral in Florida.

Thus, the evidence shows Feldman evaluated respondents' confidential information and advised them on their potential claims against the third party in Florida, jurisdictional issues, and the possible forums to bring the claims. Temurian had a lengthy telephone conversation with Feldman that one can reasonably conclude was confidential since Temurian disclosed sensitive information about respondents' business and finances while discussing their dispute with the third party in Florida. ""When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established prima facie." [Citation.] "The absence of an agreement with respect to the fee to be charged does not prevent the relationship from arising.""" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1148 (*SpeeDee Oil*).) Appellants contend Feldman's advice was minimal as he never formulated any policy or strategy for respondents' potential claims against the third party. However, "[t]he primary concern is whether and to what extent the attorney acquired confidential information. [Citation.] That question is not necessarily answered by the amount of time involved." (*Ibid*.) "[A] formal retainer agreement is not required before attorneys acquire fiduciary obligations of loyalty and confidentiality . . . ." (*Ibid*.) Here, respondents sought and secured Feldman's legal advice. Feldman therefore had a duty not to use any acquired confidential information in litigation that is adverse to respondents' interests.

In addition, respondents' counsel at the time, Yacoubian, submitted a declaration that further bolstered respondents' position. Yacoubian sent Feldman a letter in July 2023, advising him of the conflict and requesting he withdraw from representing

13

appellants. Yacoubian attested Feldman initially denied having a conversation with Temurian, but he eventually recalled the conversation and nonetheless maintained he need not withdraw. Feldman offered to allow questioning on the conflict during Rasiah's deposition, to which Yacoubian agreed. At the deposition, however, Feldman objected to and instructed Rasiah not to respond to questions regarding the conflict.

Moreover, Yacoubian had the State Bar of California investigating the conflict. Yacoubian declared, in November 2023, she received a call from Andy Bang, an investigating attorney at the State Bar, regarding their investigation. Yacoubian was advised to file a motion to disqualify counsel.

Appellants contend respondents never had any direct contact with Feldman, who does not remember the conversation with Temurian and no telephone records were found, and they waived confidentiality because they voluntarily sent the information to Rasiah first. However, "[u]nder [the substantial evidence] standard of review, 'the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact.'" (*Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173.) Here, Temurian provided statements that he spoke at length with Feldman and disclosed confidential information about his business and finances during this conversation. Temurian also provided his May 25, 2018 e-mail to the Florida counsel whom Feldman referred Temurian for the dispute with the third party. Moreover, Yacoubian provided statements that Feldman eventually remembered the conversation with Temurian. Yacoubian also showed Feldman objected to and instructed

14

Rasiah not to answer deposition questions regarding the conflict. Given the foregoing evidence, the trial court found Temurian's statements supporting the motion credible.

"When the exercise of the court's discretion depends on how it resolves questions of fact, we must defer to the court's "'credibility determinations and findings on questions of historical fact if supported by substantial evidence.'"" (*Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 817.) Here, appellants provide their own interpretations and contentions regarding the evidence. But the trial court's assessment of Temurian's credibility is based on substantial evidence. The court's determination on this matter is therefore entitled to deference.

Furthermore, we disagree the evidence shows respondents waived confidentiality. While appellants focus on the documents respondents sent to Rasiah to be forwarded to Feldman,[3]

---

[3] To avoid waiver of privilege, a disclosing party must have a reasonable expectation that a third party will preserve the confidentiality of the information. (See *OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 891 ["If a disclosing party does not have a reasonable expectation that a third party will preserve the confidentiality of the information, then any applicable privileges are waived."].) Temurian attested the confidential documents regarding Vista's business sent to Rasiah were intended to be forwarded to Feldman. While it can reasonably be inferred Temurian had an understanding with Rasiah the documents attached to the first e-mail were confidential and for Feldman's review only, Temurian arguably waived confidentiality as to the documents attached to the second e-mail because he asked Rasiah to read them. Regardless, we need not decide here whether confidentiality in the e-mailed

15

Temurian later had an extended telephone conversation with Feldman, without appellants present, in which Temurian disclosed important confidential information about respondents' business, their company's structure, financial condition, and related matters. Appellants argue Feldman could not have gained detailed knowledge because respondents' contact with him was only of a limited nature. However, "'[e]ven the briefest conversation between a lawyer and a client can result in the disclosure of confidences.'" (*SpeeDee Oil, supra*, 20 Cal.4th at p. 1148.) Further, we disagree respondents' contact with Feldman was only of a limited nature. Feldman did a considerable amount of preliminary work leading up to the lengthy conversation with Temurian, including reviewing respondents' documents concerning their business and the Florida dispute and providing a legal opinion therefrom. By the time Feldman spoke directly with Temurian, Feldman likely could engage in a substantial conversation and acquire significant knowledge regarding respondents' business and finances.

Appellants also assert Temurian's statement is vague, ambiguous, and lacks specificity. But Temurian indicates he had the telephone conversation when he received Feldman's opinion on April 14, 2018. Temurian disclosed confidential information about respondents' business, their company structure, their financial condition, and related matters. Temurian attested Feldman referred him to counsel in Florida and provided his

---

documents was waived because appellants were not privy to Temurian's later telephone conversation with Feldman in which they discussed important confidential information about respondents' business and finances while conferring on the dispute with the third party in Florida.

16

May 25, 2018 e-mail to the referral. These accounts are more than mere vague, ambiguous, or conclusory statements. Temurian provided the date, the subject matters of the confidential information, and other details, such as the Florida counsel referral, related the communications with Feldman. It can reasonably be concluded Feldman learned from the telephone conversation substantial confidential information about respondents' business and finances that is materially adverse to their interests in this litigation.

In addition, appellants contend the confidential information is not material to this litigation because the Florida matter is entirely unrelated to this case. However, the information Temurian disclosed to Feldman included more general matters concerning respondents and their business that was not only relevant to the Florida dispute. Temurian attested he disclosed confidential information about respondents' business, their company's structure, and finances. The complaint here alleged respondents suffered severe financial harm, including having to refund customers who ordered Mini Miners from respondents. The complaint also alleged appellants knew the Mini Miners they developed were not compatible with respondents' operating system. Information regarding respondents' business and finances, which may include information regarding respondents' customer base, is significant to proving respondents' financial harm. Further, information as to respondents' business structure and operations is likely to be material to proving whether appellants knew the Mini Miners they developed were not compatible with respondents' operating system. Accordingly, it can reasonably be concluded Feldman's access to confidential information about respondents' business

17

and finances would be materially adverse to their interests in the litigation.

Because substantial evidence supports the trial court's findings that Feldman obtained confidential information materially adverse to respondents' interests in the litigation, we do not need to determine whether respondents had an attorney-client relationship with Feldman. As discussed above, disclosure of confidential information adverse to the moving party's interests in the litigation may be grounds for disqualification of counsel regardless of whether an attorney-client relationship existed. (*Great Lakes Construction*, *supra*, 186 Cal.App.4th at p. 1356.) Since there is a proper basis for the court's disqualification of counsel that is supported by substantial evidence, the other grounds for disqualification need not be considered here.

## III.   The trial court did not err in finding no waiver of the right to disqualify counsel

Finally, appellants posit respondents waived their right to disqualify counsel because they unduly delayed in bringing their motion, which resulted in "extreme" prejudice to appellants. Appellants assert the disqualification motion was filed late in the litigation and appellants had already expended substantial legal fees.

"[A]ttorney disqualification can be impliedly waived by failing to bring the motion in a timely manner." (*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 844.) "In exercising its discretion with respect to granting or denying a disqualification motion, a trial court may properly consider the possibility that the party brought the motion as a tactical device to delay litigation." (*Western Continental*

*Operating Co. v. Natural Gas Corp.* (1989) 212 Cal.App.3d 752, 763.) "However, to result in a waiver, the 'delay [and] . . . the prejudice to the opponent must be extreme.' [Citation.] Factors relevant to the reasonableness of a delay include the 'stage of litigation at which the disqualification motion is made' and the complexity of the case." (*Ontiveros v. Constable, supra*, 245 Cal.App.4th at p. 701.) "Even if tactical advantages attend the motion [f]or disqualification, that alone does not justify denying an otherwise meritorious motion." (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 599.)

We conclude the trial court did not abuse its discretion in finding there was no waiver of right to disqualify counsel. While respondents filed the disqualification motion late in the litigation on January 10, 2024, only three weeks before the trial date on January 31, 2024, the court vacated the trial date when it granted respondents' ex parte application. Thus, the court can reasonably find there was no *extreme* prejudice to appellants because the rescheduling of calendar allowed appellants to seek new counsel and prepare for trial. Further, we note the court reasonably considered the fact that respondents' counsel at the time had recently substituted into the case, which may show respondents had not acted in bad faith. As discussed above, the court reasonably found respondents' disqualification motion was meritorious. Even if any delay benefited respondents, the motion can reasonably be granted in the absence of extreme prejudice to the opposing party.

In short, we conclude the trial court reasonably acted within its discretion in granting respondents' motion to disqualify counsel. There was substantial evidence appellants' counsel obtained confidential information regarding respondents'

business and finances. Temurian disclosed such information in a lengthy telephone conversation with Feldman, who had reviewed respondents' business documents and advised on their dispute with a third party in Florida. Respondents' counsel at the time submitted a declaration corroborating Temurian's statements and detailing other circumstances that show a conflict existed. The issues appellants raise are their own interpretations and contentions regarding the evidence, which is insufficient to show reversible error here. In addition, it was not an abuse of discretion to find respondents did not waive their right to disqualify counsel because the trial date had been vacated and there was thus no extreme prejudice to appellants.

## DISPOSITION

The July 30, 2024 order granting the motion to disqualify counsel is affirmed. The parties shall each bear their own respective costs on appeal.

CHAVEZ, J.

We concur:

LUI, P. J.

ASHMANN-GERST, J.

20